[No. 2845.]

## Duncan J. McCall v. The State.

1. Theft — Practice — Evidence — Intent.—In a trial for the theft of a cow, the State was permitted to prove that when the cow was taken she had a yearling with her, which the defendant penned with the cow, and which was branded by the defendant.  *Held,* that such evidence was admissible as tending to prove the intent with which the cow was taken. The rule is that an extraneous crime may be proved where it forms part of the *res gestæ* of the crime charged, or where it tends to identify the defendant as the guilty party, or where it tends to prove the defendant's motive or intent in committing the act of which he is accused.

2. Same—Charge of the Court.—Where evidence of an extraneous crime has been admitted for the purpose of showing the intent of the defendant in the commission of the act alleged against him, it is the duty of the trial court, in charging the jury, to explain the purpose for which it was admitted, and to limit its effect to this purpose alone.

3. Same—Practice.—Bill of exceptions may be taken at any time before the trial is concluded, which event transpires only when the verdict of the jury has been returned into court and received.

4. Same.—It is not required that the defense in a criminal trial shall except to the charge as given, or to the action of the court in refusing charges asked, at the very time that the one is given or the other refused.  Such exceptions may be taken after the jury has retired from the box.

5. Same—Reasonable Doubt.—When an offense consists of different degrees, a charge giving the defense the benefit of the reasonable doubt between the degrees would be proper, and ordinarily in such case it would be error to refuse a proper charge on the subject when requested. But it is not required that the reasonable doubt shall be charged with regard to an affirmative independent defense, and it is sufficient on the sub-ject, if, in ordinary cases, the jury are told that they should acquit if from the evidence they entertained a reasonable doubt of the defendant's guilt.

6. Same—Charge of the Court.—See the statement of the case for a charge of the court *held* not sufficient to instruct the jury thoroughly on the subject of the defendant's bad faith with respect to the claim of another to the property alleged to be stolen, even if any charge on the subject was justified by the evidence.  Note also the suggestion of the court that the latter part of said charge was superfluous, the same being supplied by other portions of the charge.

7. Same—Bill of Sale.—The trial court charged the jury: "If you find defendant guilty of theft of said cow, it would not be any defense to the prosecution for such theft that he afterwards paid the real owner for it, and took a bill of sale from him for the animal; but if defendant took a bill of sale for and paid Abernathy for the cow, such fact will be weighed

W

by the jury in connection with all the other facts and circumstances in evidence going to show a guilty or an innocent intent on the part of defendant." *Held*, error, inasmuch as the fact charged upon is shown by the evidence to have transpired two months after the taking, and is therefore too remote from the act of taking to have had any legitimate bearing upon that act. And *held* further, that the latter part of said clause is erroneous in authorizing the jury to weigh this fact in determining the guilty or innocent intent of the defendant.

8 Same—Recent Possession of Stolen Property.—The court charged the jury that possession of the cow recently after the theft, if stolen, "is not alone sufficient to warrant a conviction. Such possession is only a circumstance to be considered by the jury with all the other facts in evidence in the case; and if defendant, while in possession, made any reasonable and satisfactory explanation of such possession, unless shown to be false, it will rebut any presumption of guilt which you deem may arise from such possession," etc. *Held*, not to be a charge upon the weight of evidence, but erroneous in confining the explanation to the very time when the defendant had possession of the alleged stolen property.

APPEAL from the District Court of Milam. Tried below before the Hon. W. E. Collard.

The indictment charged the appellant with the theft of one head of neat cattle, the property of S. H. Abernathy, in Milam county, Texas, on the first day of September, 1880. He was convicted, and awarded a term of two years in the penitentiary.

John Eplin was the first witness for the State. He testified that he knew the defendant, and for eighteen months had known the cow the defendant is alleged to have stolen. The witness's brother Robert had previously taken her up as an esstray, and milked her for over twelve months. She was a brown cow with white face, white flanks, and a white stripe across the shoulders. She was branded S A, the A so blurred or blotched that it could not readily or positively be distinguished from an R. She was marked, and had with her, when Robert Eplin turned her out, a brindle yearling or old calf, unmarked and unbranded. When Robert Eplin took up the cow as an estray, the witness sent word of that fact to the party in Bell county who gave the S R brand, and also to Mr. Abernathy.

Some time late in June, 1881, Robert Eplin went to Maysville, and on starting he turned this cow and yearling, with other milch stock, out upon the range near his house in Milam county, Texas. The cow and yearling were missing from the range when Robert Eplin returned at the end of two days, and could not be found after several days search. Late in August or early

in September, 1881, the witness, his brother Robert and Jerry Perkins found the two animals in Cosby's pasture in Milam county, Texas. The brand on the cow had been changed from S A to 8 AL, the AL connected. The change was made by drawing a straight line crossways from one point of the S to the other, and by adding a bar to the lower extreme of the right stem of the A. All parts of the brand looked equally fresh, and appeared to be some six weeks or two months old. The witness knew, and stated positively, that this was the same cow his brother had taken up and milked as an estray, and had turned out on the range at the time mentioned, and he stated positively that her brand had since been changed in the manner described. The yearling had been put in the mark of the cow, and branded 8 on the side. The witness asked Cosby, who was a kinsman of the defendant, who put those animals in his pasture. Cosby said that the defendant did, and witness told him that the defendant had better see him, witness, about it. Robert Eplin lives about one and a half miles the defendant's. Defendant was well acquainted with the range. Witness did not give his consent to the taking of this animal.

Cross-examined, the witness stated that on the day after he saw Cosby, the defendant came to see him at his mill, and told him that he had taken the cow under the authority of a man named Jackson, who, he said, drove some cattle through the neighborhood, and lost several head. He, defendant, produced a power of attorney or authority, written in a pocket book, authorizing him to get cattle in the 8 AL (latter connected) brand, and marked as this cow was. On exhibiting this writing, the defendant said that "if anybody has any better right to this cow than I have, he will have to prove it, or I will be d—d apt to keep her." The witness had never heard of such a man as Jackson in the county, before or since this occurrence.

R. P. Eplin, for the State, corroborated the narrative of his brother, the first witness, in every minute particular.

S. H. Abernathy was the next witness for the State. He testified that he lived in Bell county, Texas. About eighteen months prior to September, 1881, he lost a brown cow with white face, white flanks, and a white stripe across the shoulder. She was branded S A. Witness had raised, marked and branded her, and valued her as one of his best and gentlest milch cows. About September, 1881, the witness's son-in-law informed the witness that the defendant had her in Milam county. Witness

went to Milam county, described the cow to the defendant, who then informed him that he, the defendant, had sold the cow to S. J. Davis, a butcher in Rockdale, and requested witness to go and see if the cow was his. Defendant told the witness that the description given by him suited the cow, except the brand. Witness asked him if the cow had a calf, and he said not. The defendant at that time exhibited to the witness an authority signed "J. J. Jackson." It was written in a pocket memorandum book. The body of the instrument and the signature were in different handwritings. It purported to authorize the defendant to take up cattle in the 8 AL (AL connected) brand. The defendant said that he took up and sold the cow under that authority.

The witness went to Rockdale and found his cow in Davis's pasture. He recognized her by flesh marks, and pointed her out to Davis at a distance of four or five hundred yards. He found her brand changed in the manner described by other witnesses. The witness returned to defendant's next day and reported the cow as his. The defendant paid him fifteen dollars for her, and the witness executed a bill of sale. He told defendant that he learned that the cow had a yearling. The defendant admitted that she had, and said that he put the yearling in the mark and brand which was on the cow. He, defendant, said that he did not have the money to pay for the yearling, but that Cosby would buy it. Cosby paid witness for it, and witness executed his bill of sale. Witness did not ask defendant, when he first met him, if the cow had a yearling, but asked if she had a calf. Defendant's power of attorney looked all right. He did not hesitate to tell the witness about the cow when asked, but said that he took her under Jackson's authority, but wanted the witness to recover her if she was his property.

John Harris was the first witness for the defense. He testified that he lived within four hundred yards of the defendant. He saw the cow alleged to be stolen, on the range, four or five miles from Eplin's, about the last of June, 1881. She was then branded 8 AL (AL connected). The witness knew a man named Jackson, who drove a herd of cattle through the neighborhood in the spring of 1880. Witness saw him at the defendant's house on his return from that trip. Witness heard him talking to defendant about recovering cattle he said he had lost. He sat down and wrote and signed an authority for the defendant to gather cattle in the brand described, and other brands.

Cross-examined, the witness said that Jackson was from some East Texas county—Jackson county, he thought. Witness saw him write the authority and "sign it as a witness." Witness thought he signed the name "William Jackson," and witness thought he called himself William Jackson. Witness never saw him before he drove the cattle, and has not seen him since he gave defendant the writing. Will Lewis was present, and signed the writing as a witness. The "authority" included four or five other brands, of which witness remembered but one, K 8. The witness had known this particular cow on the range for about a year. She was a red cow with white on her brisket, and had no other white about her. She had a calf of like color. She and the calf were both branded 8 AL (last characters connected), and had been so branded for the year the witness had known them on the range. Witness had seen them in Cosby's pasture since June, 1881.

Ed. Cosby testified, for the defense, that the defendant put the cow in question in his pasture in June or July, 1881. Witness was not at home at the time, and did not see the cow for some two weeks after she was put in the pasture. She was then branded as now, and the brand did not look new, but had hair growing on it. Defendant told the witness that he had put the cow in the pasture. Witness made no effort to conceal the cow.

Witness was at his tank in his pasture when the Eplins found the cow in the pasture. They said they had been milking the cow for a year, knew whose property she was, and directed witness to tell defendant to see them about her, or her taking would cost him several cows. Witness told defendant, and defendant said he took the cow up for another man, whose name, the witness now thinks he said, was Moore. Defendant's wife and the witness are second cousins.

Jesse Parvin testified that he went to work for Cosby on the eleventh of July, 1881, and two weeks thereafter saw the cow and calf described in Cosby's pasture. They both bore the 8 and connected AL brand. The brands on neither appeared fresh.

James Benton, in rebuttal, testified, for the State, that he saw the cow on the morning defendant sold her to Davis. The brand looked recent.

The charge of the court referred to in the sixth head note of this report reads as follows:

"But if one Jackson gave the defendant a power of attorney

or authority to gather and take control of cattle which Jackson claimed, or claimed he had lost, and Jackson had no such cattle, or right to gather such cattle, as were described in the power of attorney, and defendant knew such facts, or if he had knowledge of such facts with reference to Jackson, or his claim to cattle, as made it an act of bad faith on the part of defendant to use said authority in collecting cattle, and defendant took up said animal, not honestly believing he had a valid power from the real owner to do so, but with the fraudulent purpose to deprive the owner of its value, and to convert the same to his own use, and without the consent of the owner, such a taking would be theft."

The motion for new trial raised the questions discussed in the opinion, and was overruled, whereupon appeal was prosecuted.

*W. K. Homan*, for the appellant: Appellant's first bill of exceptions relates to the admission of evidence concerning another animal than that charged to have been stolen. No reason appears to have existed, and none was assigned, for the admission of such evidence. Appellant's possession of the identical animal charged to have been stolen had been proved, and was not controverted. Evidence concerning the yearling was therefore not necessary to connect appellant with the possession of the cow.

If this evidence was admitted as throwing light on the controverted question of appellant's intent in taking the cow, the jury should have been instructed as to the object of its admission, and guarded against an improper application of it. No instruction was given on the point, however, and that requested by appellant was refused. (See *Long* v. *The State*, 11 Texas Ct. App., 381.)

The court refused to sign a bill of exceptions presented by appellant to the charge given the jury, and to the refusal of the court to give the instructions asked by appellant, assigning as a reason that "some of the exceptions were not taken at all, and none of them were taken until after the jury had retired to consider of their verdict." Unfortunately, the judge did not state which of the exceptions embodied in the bill had not been taken. Evidently, however, the refusal of the bill of exceptions was based upon the judge's idea that no exception could be allowed unless taken before the retirement of the jury from the box. This is not believed to be a proper or fair construction of the law or of the rules of the Appellate Court in felony cases. It is

sufficient that the exception is taken "at the time of the trial" (Code. Crim. Proc., Arts. 685-6), which is not concluded until the verdict of the jury is returned. The rules in civil suits which govern (Code Crim. Proc., Art. 686), provide that the ruling of the court in giving, refusing or qualifying instructions to the jury shall be regarded as excepted to in all cases. (Rev. Stats., Art. 1361.) A stricter rule has sometimes been followed in misdemeanor cases, where the court is not required to charge the jury, and need only do so at the request of the parties. (Code Crim. Proc., Art. 681.)

It would be manifestly a harsh rule that would require a defendant in a felony case to state his exceptions to the charge of the court at the moment it is read, and such a course must often work to the prejudice of the defendant with the jury. Besides, in a case involving numerous questions properly the subjects of a charge to the jury, it is clearly an impossibility for defending counsel, without time for careful examination of the charge, to present such exceptions as may be proper, and, if such time should be allowed, it would result in great delay and inconvenience. It is not believed that the requirement of the court below, as indicated by the refusal of the bill of exceptions, is warranted by the spirit of the law, the requirements of this court, or the practice of the District Courts.

The court erred in failing to give appellant the benefit of the reasonable doubt upon the independent offense of good faith in the taking of the animal charged to have been stolen, and in refusing the charge requested on that point. (*Sisk* v. *The State,* 9 Texas Ct. App., 333.) A charge in a case like this, where an affirmative independent defense is interposed, is not sufficient when it gives defendant the benefit of the reasonable doubt on the general question of guilt. (*Kay* v. *The State,* 40 Texas, 29.) If the evidence was sufficiently strong, that defendant acquired the animal in good faith, to produce upon the mind of the jury a reasonable doubt of a fraudulent taking, he was entitled to an acquittal, and the jury should have been so instructed. (*Bishop* v. *The State,* 43 Texas, 398.) These objections apply on the refusal to charge the reasonable doubt on the question of the falsity of any reasonable explanation given by him of his possession of the cow charged to have been stolen. A defendant is entitled to a distinct and affirmative (not merely negative) presentation of his defenses in the charge to the jury. (*Reynolds* v. *The*

*State,* 8 Texas Ct. App., 412; *Greta* v. *The State,* 9 Texas Ct.
App., 433.)

Appellant claimed to have been authorized by one Jackson to
take the cow in question. The court charged the jury, in effect,
that such claim would avail the defendant nothing, if, at the
time of taking, he "had knowledge of such facts with reference
to Jackson or his claim to cattle as made it an act of bad faith
on his part to use said authority in collecting cattle." This ex-
pression, in the connection as used, was highly improper, and
must have misled the jury to defendant's prejudice. They were
not told but left to conjecture as to what these "facts" were
which might render the taking of the cow an act of bad faith
on the part of the defendant. It is tantamount to the statement
that appellant's claim must have been well founded, or that he
must have exercised "ordinary care" in ascertaining Jackson's
right to give him the authority claimed, both of which expres-
sions have been denounced by our appellate courts. (*Kay* v.
*The State,* 40 Texas, 29; *Neely* v. *The State,* 8 Texas Ct. App., 64.)

In the ninth paragraph of the charge the court told the jury,
substantially, that if after taking the cow defendant paid the
owner for it, "such fact will be weighed by the jury in connec-
tion with all the other facts and circumstances in evidence go-
ing to show a guilty or innocent intent on the part of the de-
fendant." This charge is directly on the weight of the evidence,
and being immediately preceded by the statement (correct in
itself) that if defendant stole the cow, the fact that he after-
ward paid for her would be no defense, it was well calculated to
impress the jury that in the opinion of the court defendant's
act in paying for the cow was evidence of a guilty intent in the
original taking. The injury to defendant by this charge is ag-
gravated by the words *"or an innocent* intent." It was no part
of the office of the jury to enquire whether the evidence showed
an innocent intent on the part of defendant. It is difficult to
conceive how the fact that defendant paid for the cow, two
months after he had taken her, could throw any light on the
question of his intent in the taking; yet the jury were informed
that they might so consider it. It was wholly immaterial
whether defendant had or had not paid for the cow, and this
being so, the error of the court in singling out that fact, and
giving it prominence as one from which, with others, the jury
might infer the guilt of defendant, was a most serious one, for·

which alone the judgment of conviction should be reversed. (*Shultz* v. *The State*, 5 Texas Ct. App., 390.)

The expression in the twelfth paragraph of the charge of the court, that possession by defendant of the cow recently after the theft (if stolen) "is not alone sufficient to warrant a conviction; such possession is only a circumstance to be considered by the jury with all the other facts and circumstances in evidence in the case," is a palpable violation of the rule forbidding a charge upon the weight of evidence, which was pointedly denounced by this court in *McWhorter* v. *The State*, 11 Texas Court of Appeals, 584. (See, also, *Williams* v. *The State*, Id., 275.) The error is, if possible, made more serious by the expression immediately following it, that if defendant made any reasonable and satisfactory explanation of such possession, * * * "it will rebut any presumption of guilt which you may deem arises from such possession." In other words, the jury are informed that a presumption of guilt may arise from the bare fact of the possession of property recently stolen, which it is the business of the defendant to rebut, and unless rebutted by him, of course the presumption stands, and the conviction of defendant must follow. If this were true abstractly, it is clearly erroneous for a judge to tell a jury, even indirectly, that they may raise a presumption of guilt from any single fact in evidence. The error of this part of the charge has been passed upon in *Williams* v. *The State*, 4 Texas Court of Appeals, 178, and in *Foster* v. *The State*, 1 Texas Court of Appeals, 363.

The court, in the twelfth paragraph of the charge, limits the jury in considering any explanation of defendant's possession of the cow to the period during which he had the animal in possession, thus effectually withdrawing from the jury the testimony of Abernathy, the owner of the cow, as to the explanation given him by defendant, when he first approached him on the subject, on the day after defendant had parted with the possession of the cow. This was clearly error, and was prejudicial to the rights of the defendant.

Abernathy was the State's witness, and the statements of defendant made to him, in which defendant gave an explanation of his possession of the cow, were proved by the State. The defendant was certainly entitled to the benefit of this testimony, but he was as certainly deprived of it by this charge. (*Anderson* v. *The State*, 11 Texas Ct. App., 567.) Defendant asked a proper charge on this point, which the court refused.

*J. H. Burts,* Assistant Attorney General, for the State.

WILLSON, JUDGE.    We think the evidence relating to the yearling was admissible, as tending to prove a fraudulent intent on the part of the defendant in taking the cow.   It is permissible to prove an extraneous crime where it forms part of the *res gestæ* of the crime charged, or where it tends to identify the defendant as the guilty party, or where it tends to prove the defendant's motive or intent in committing the act of which he is accused.   (Whart. Cr. Ev., sec. 31 *et seq.; Galbraith* v. *The State,* 41 Texas, 567.)

But the evidence about the yearling being admissible in this case only for the single purpose of showing the intent with which defendant took the cow, the court, in charging the jury, should have explained the purpose for which it was admitted, and should have limited its effect to this purpose alone.   (*Long* v. *The State,* 11 Texas Ct. App., 381.)   In the absence of such a charge the jury might have concluded that the defendant had stolen the yearling, and have convicted him of that theft—a theft with which he was not charged in the indictment; while they may not have been satisfied from the evidence, beyond a reasonable doubt, that he had stolen the cow, that being the theft charged in the indictment.   (Whart. Cr. Ev., sec. 46; *Com.* v. *Shepard,* 1 Allen, Mass., 575.)

We agree with counsel for appellant in his proposition that a bill of exception may be taken at any time before the trial is concluded, and that the trial is not concluded before the verdict of the jury is returned into court and received.   This proposition, we think, is fully sustained by Article 686 of the Code of Criminal Procedure, which provides as follows:

"On the trial of any criminal action, the defendant, by himself or counsel, may tender his bill of exceptions to any decision, opinion, order or charge of the court, or other proceeding in the case, and the judge shall sign such bill of exceptions, under the rules prescribed in civil suits, in order that such decision, opinion, order or charge may be revised upon appeal."

We do not think it is contemplated by the law that a defendant in a criminal trial desiring to except to the charge of the court, or to the action of the court in refusing a charge, should do so at the very time the charge is given or refused.   To require him to do this would be placing before him the alternative of passively and silently submitting to what he conceives to be

an error, or to take the risk of creating against himself a prejudice in the minds of the jury, by expressing a dissatisfaction with the law as given them in charge by the court. We think a proper and the usual practice is to allow the defendant to take his bills of exception to the charges of the court, and to the refusal of charges, after the jury has retired from the box.

Upon the subject of a reasonable doubt, we think the charge of the court was sufficient. We do not understand it to be required that this charge upon reasonable doubt shall be given in regard to an affirmative, independent defense, as contended for by counsel, nor do we understand the cases cited by him as supporting that proposition. We think the demands of the law have been complied with when the jury are told that if, from the evidence, they entertain a reasonable doubt of the defendant's guilt, they will acquit him. Where an offense consists of different degrees, a charge giving the defendant the benefit of a reasonable doubt between the degrees would be proper, and it would be error ordinarily in such case to refuse such a charge when requested; but, in a case like the present one, the court having given the defendant the benefit of a reasonable doubt with reference to the whole case, we do not think it was error to refuse the charges requested by defendant.

Objections are urged by appellant's counsel to several other portions of the charge. Without entering upon an extended discussion of those objections, we will merely call attention to them with a view to a future trial of the cause.

1. If the latter portion of paragraph six of the charge, as to defendant's knowledge of facts in relation to Jackson or his claim to the cow, as made it an act of bad faith on the part of defendant to use the authority of Jackson, etc., was justified by the evidence in the case, which we think is quite questionable, the jury should have been more fully instructed as to the nature of the facts, a knowledge of which on the part of the defendant would be sufficient to impute to him bad faith. We think this latter portion of paragraph six might well have been omitted altogether, it being supplied fully by other portions of the charge as to the intent of the defendant in taking the cow.

2. It is objected to the ninth paragraph of the charge, that it is upon the weight of evidence, and related to an immaterial fact, that is, the payment to the owner of the cow of the money defendant had received for her, some two months after the alleged theft. We are of the opinion that this fact was too re-

mote from the act of taking the cow to have any legitimate
bearing upon that act, or to shed any light upon that transac-
tion, and that it should not have been noticed in the charge.
While the first clause of the paragraph is correct law in the
abstract, we think the latter portion of it, which instructs the
jury that they may weigh this fact in considering the guilty or
innocent intent of the defendant, is erroneous and should have
been omitted. (*Shultz* v. *The State*, 5 Texas Ct. App., 390.)

3. In the twelfth paragraph the jury are instructed that pos-
session of the cow recently after the theft, if stolen, "is not
alone sufficient to warrant a conviction; such possession is only
a circumstance to be considered by the jury with all the other
facts in evidence in the case; and if defendant, *while in posses-
sion*, made any reasonable and satisfactory explanation of such
possession, unless shown to be false, it will rebut any presump-
tion of guilt which you deem may arise from such possession,"
etc. It is objected to this paragraph as above quoted that it is
upon the weight of evidence, and that it confines the explana-
tion of the possession to the time when the cow was in the
actual possession of the defendant. We do not regard this
charge as upon the weight of evidence. It is essentially differ-
ent from the charges condemned in *Williams* v. *The State*, 11
Texas Court of Appeals, 275, and *McWhorter* v. *The State*, Id.,
584, and *Foster* v. *The State*, 1 Texas Court of Appeals, 363,
cited by appellant. We think, however, it was objectionable in
confining the explanation to the very time when defendant had
possession of the alleged stolen property. In this case the evi-
dence shows that the explanation of possession made by defend-
ant was on the next day after he had sold and parted with the
possession of the cow. Under the charge of the court above
quoted, such explanation could not have been taken into consid-
eration by the jury. (*Anderson* v. *The State*, 11 Texas Ct. App.,
576.)

Because of the errors we have mentioned, the judgment is
reversed and the cause remanded.

*Reversed and remanded.*

Opinion delivered June 6, 1883.