

# IN THE
# TENTH COURT OF APPEALS

No. 10-09-00286-CR

**CATARINO JOSE CASTILLO,**

**Appellant**

**v.**

**THE STATE OF TEXAS,**

**Appellee**

From the 85th District Court
Brazos County, Texas
Trial Court No. 08-02613-CRF-85

## MEMORANDUM OPINION

A jury found Catarino Jose Castillo guilty of aggravated assault on a public servant, evading arrest with a vehicle, and possession of a controlled substance with intent to deliver (one gram or more but less than four grams). The jury assessed his punishment at thirty-five, three, and three years' imprisonment, respectively, to run concurrently. In four issues, Castillo appeals. We will affirm.

### I. BACKGROUND

On the afternoon of September 2, 2007, several Bryan police officers responded to

a "shots-fired" call at Nicky's Food Mart. When Officer Brady Rockett arrived in that area of town, he began looking around to see if he could find the several vehicles that had been described as possibly being involved in the shooting. As he was driving down a street near Nicky's, he noticed several cars in front of a house that he knew to be associated with gang activity and where five to ten men were out in the front yard on their cell phones. After passing the house, Officer Rockett turned around to go back toward the house when he noticed a pearl-colored car with two occupants leave from in front of the house. A pearl-colored car was one of the vehicles described as being possibly involved in the shooting at Nicky's.

Officer Rockett began following the car. Officer Derrick McKethon heard this on his radio, pulled onto the street where they were traveling, stopped, and got out of his car. As the pearl-colored car approached him, he could tell that the passenger in the vehicle was not wearing his seatbelt, so he stopped the car. When the car stopped, Officer McKethon approached the driver, told him why he was being stopped, and asked for his driver's license and insurance. He then asked the driver to step out of the car. The driver complied, and he and Officer McKethon went to the side of the road in front of the vehicle.

In the meantime, when the pearl-colored car pulled over, Officer Rockett pulled in behind it and activated his car's emergency lights. Officer Rockett then got out of his car and approached the passenger's side of the pearl-colored car. He asked the passenger for his driver's license/identification. The passenger complied, and Officer Rockett identified him as Castillo. Officer Rockett then told Castillo to keep his hands

where he could see them and that he was "going to pull him out to perform a Terry frisk." Castillo remained seated. Officer Rockett then asked him if there were any weapons in the car or on him. Officer Rockett believed that Castillo shook his head "no," but Castillo started getting extremely nervous. His hands were shaking, he was sweating profusely, and his eyes darted back and forth.

Officer Stacy Nunn then approached the driver's side of the car from behind. Officer Rockett saw her and told her "10-zero," which is a warning to use extreme caution. At that point, Castillo turned his body toward the driver's side of the car, presumably to look toward Officer Nunn; however, this movement revealed to Officer Rockett the butt of a pistol lying in Castillo's lap. Officer Rockett immediately reached through the car window and tried to gain control of Castillo's hands. Officer Rockett also yelled, "Gun. Gun. Gun." When Officer Rockett grabbed for Castillo, Castillo started pushing away from him and tried to move into the driver's seat. As Castillo was moving into the driver's seat, the officers heard a small-caliber gunshot from within the car. Officer Nunn then fired one shot at Castillo, and Officer McKethon fired two shots at him, but Castillo was able to get into the driver's seat and drive off. A wounded Castillo was located shortly thereafter at a residence.

## II. JURY CHARGE

In his first issue, Castillo contends that the trial court committed charge error (1) by failing to include in the verdict form on Count One that the jury could find him "not guilty" of the lesser-included offense of deadly conduct; (2) by providing a verdict form on Count One that misstated that the lesser-included offense of deadly conduct was

alleged in Count One of the indictment; and (3) by providing "contradictory, vague, and confusing" instructions. In analyzing a jury-charge issue, we first decide whether error exists. *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005).

On Count One, the trial court instructed the jury on aggravated assault against a public servant as well as the lesser-included offense of deadly conduct. After the application paragraph dealing with aggravated assault against a public servant, the trial court instructed the jury as follows: "If you do not so believe or if you have a reasonable doubt thereof, you will find the defendant not guilty of aggravated assault on a public servant; and you will proceed to consider whether the defendant is guilty of the lesser-included offense of deadly conduct." Then, after setting out the application paragraph for the lesser-included offense of deadly conduct, the trial court instructed the jury:

> . . . If you do not so believe or if you have a reasonable doubt thereof, you will find the defendant not guilty of any offense alleged in the indictment.
>
> If you should find from the evidence beyond a reasonable doubt that the defendant is guilty of either aggravated assault on a public servant or deadly conduct but you have a reasonable doubt as to which offense he is guilty, then you should resolve that doubt in the defendant's favor and find him guilty of the lesser offense of deadly conduct. If you have a reasonable doubt as to whether the defendant is guilty of any offense, then you should acquit the defendant and say by your verdict "Not guilty."

Finally, at the end of the jury charge, the trial court instructed the jury, "After you have reached a unanimous verdict, the Presiding Juror will certify the verdict by completing the appropriate form attached to this charge and signing it as Presiding Juror." The attached verdict form on Count One stated as follows:

We, the jury, find the defendant, CATARINO CASTILLO, **GUILTY** of the offense of Aggravated Assault Against a Public Servant as alleged in Count One of the indictment.

_____

PRESIDING JUROR

We, the jury, find the defendant, CATARINO CASTILLO, **GUILTY** of the lesser included offense of Deadly Conduct as alleged in Count One of the indictment.

_____

PRESIDING JUROR

We, the jury, find the defendant, CATARINO CASTILLO, **NOT GUILTY**, of any offense alleged in Count One of the indictment.

_____

PRESIDING JUROR

### A.    The Jury Instructions

Regarding the jury instructions for Count One, Castillo complains that the trial court confused the jury by giving this instruction:  "If you do not so believe or if you have a reasonable doubt thereof, you will find the defendant not guilty of aggravated assault on a public servant; and you will proceed to consider whether the defendant is guilty of the lesser-included offense of deadly conduct."  Castillo complains that the trial court then compounded the confusion by giving a "benefit of the doubt" instruction:

> If you should find from the evidence beyond a reasonable doubt that the defendant is guilty of either aggravated assault on a public servant or deadly conduct but you have a reasonable doubt as to which offense he is guilty, then you should resolve that doubt in the defendant's favor and find him guilty of the lesser offense of deadly conduct.

Castillo argues that these instructions are contradictory, vague, and confusing because

they force the jury to believe that he could be guilty of both offenses, in which case the jury would be required to find him guilty of the lesser-included offense.

A "benefit of the doubt" instruction has long been recognized in Texas law. *Barrios v. State*, 283 S.W.3d 348, 352 (Tex. Crim. App. 2009) (citing *Sparks v. State*, 300 S.W. 938, 939 (Tex. Crim. App. 1927), *Bussell v. State*, 265 S.W. 164, 172 (Tex. Crim. App. 1924), *Richardson v. State*, 91 S.W. 218, 222-23 (Tex. Crim. App. 1922) (op. on reh'g), and *McCall v. State*, 14 Tex. Ct. App. 353, 363 (1883)). As a general rule, if evidence in a case leaves a reasonable doubt as to the grade or degree of the offense, upon a request by the defendant, the trial court must give the jury a "benefit of the doubt" instruction. *Benavides v. State*, 763 S.W.2d 587, 589 (Tex. App.—Corpus Christi 1988, pet. ref'd). This added instruction is given to clear up any confusion when the jury has no reasonable doubt that the defendant committed an offense, but is uncertain about the grade or degree of that offense. *Id.* Furthermore, in *Barrios*, the Court of Criminal Appeals concluded that there was no error in a jury charge containing substantially similar instructions. *See Barrios*, 283 S.W.3d at 349-53. We thus hold that submitting these instructions in the charge was not error. *See id.*

## B. The Verdict Form

We next consider Castillo's complaints that the trial court committed charge error by failing to include in the verdict form on Count One that the jury could find him "not guilty" of the lesser-included offense of deadly conduct and by providing a verdict form on Count One that misstated that the lesser-included offense of deadly conduct was alleged in Count One of the indictment.

A trial court need not attach a verdict form to the jury charge, but if it does so, it must set out every "guilty" or "not guilty" option that is available to the jury. *Jennings v. State*, 302 S.W.3d 306, 310 (Tex. Crim. App. 2010). We assume without deciding that the verdict form on Count One was erroneous.

Because Castillo did not object to the alleged error in the charge, however, it will not result in reversal of his conviction in the absence of "egregious harm." *See id.* at 311; *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g)). In examining the record for egregious harm, we consider the entire jury charge, the state of the evidence, the final arguments of the parties, and any other relevant information revealed by the record of the trial as a whole. *Olivas v. State*, 202 S.W.3d 137, 144 (Tex. Crim. App. 2006). Jury charge error is egregiously harmful if it affects the very basis of the case, deprives the defendant of a valuable right, or vitally affects a defensive theory. *Stuhler v. State*, 218 S.W.3d 706, 719 (Tex. Crim. App. 2007); *Sanchez v. State*, 209 S.W.3d 117, 121 (Tex. Crim. App. 2006).

Even though there was not a separate option in the verdict form on Count One that allowed the jury to specifically find Castillo "not guilty" of the lesser-included offense of deadly conduct, the "not guilty" option in the charge did state, "We, the jury, find the defendant, CATARINO CASTILLO, **NOT GUILTY**, of *any* offense alleged in Count One of the indictment." (Emphasis added.) Thus, we are confident that the jury understood that the "not guilty" option was a finding of "not guilty" on both the charged offense of aggravated assault against a public servant and the lesser-included offense of deadly conduct. Furthermore, the jury found Castillo guilty of the greater

offense of aggravated assault against a public servant, suggesting they were not considering a "not guilty" verdict. *See Render v. State*, 316 S.W.3d 846, 854 (Tex. App.—Dallas 2010, pet. ref'd) (holding defendant not egregiously harmed by omission of "not guilty" verdict form). Castillo's first issue is overruled.

### III.   EXTRANEOUS-OFFENSE TESTIMONY

In his second issue, Castillo contends that the trial court abused its discretion in admitting the extraneous offense testimony of a jailhouse informant. The informant testified that he came into contact with Castillo while in jail. Castillo told him that he and a rival gang had been involved in a "shoot-out." It was a "mission" that he had been given to "earn his stripes" and become a full member of the Latin Kings gang. The gun that he had used had been given to him by someone higher in rank in the gang.

The informant further testified that Castillo told him that he and "another guy" were pulled over by the police after the incident. The other guy threw his gun into the passenger seat toward Castillo, got out of the vehicle, and "surrendered." The police then tried to tell Castillo to get out of the car, but he pulled out the gun and tried to shoot at the police (at the "woman cop," specifically) so that he could get away. The police shot back, and he was hit. He then attempted to flee, pulled into a friend's house, and tried to get rid of some cocaine and the weapon, but the police found him.

### A.   Motion for Continuance

We begin by addressing Castillo's argument that the trial court abused its discretion in failing to grant the request for a continuance that he made just before the informant testified. Both Castillo's request for a continuance and subsequent re-urging

of his request were made orally to the trial court. The record does not contain a sworn, written motion requesting a continuance. *See Anderson v. State*, 301 S.W.3d 276, 278-79 (Tex. Crim. App. 2009); *see* TEX. CODE CRIM. PROC. ANN. arts. 28.03, 29.08 (West 2006). Thus, Castillo's complaint about the trial court's denial of his request for a continuance is not preserved for review. *See Anderson*, 301 S.W.3d at 279; *Dewberry v. State*, 4 S.W.3d 735, 755 (Tex. Crim. App. 1999).

**B.    Rule 404(b)**

We next address Castillo's argument that the trial court abused its discretion in admitting the jailhouse informant's extraneous offense testimony because the State failed to comply with the notice requirement of Rule 404(b).[1] *See* TEX. R. EVID. 404(b).

"Rule 404(b) literally conditions admissibility of other-crimes evidence on the State's compliance with the notice provisions of Rule 404(b)." *Hernandez v. State*, 176 S.W.3d 821, 824 (Tex. Crim. App. 2005). Rule 404(b) provides:

> Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon timely request by the accused in a criminal case, reasonable notice is given in advance of trial of intent to

---

[1] Throughout this section of his argument, Castillo repeatedly refers to the jailhouse informant's testimony generally, in contrast to the way he referred to the testimony when stating his second issue—"extraneous conduct testimony of a jailhouse informant." Thus, it is unclear whether Castillo complains of the admission of the extraneous-offense testimony of the jailhouse informant or the jailhouse informant's testimony *in its entirety*. But Rule 404(b)'s notice requirement clearly applies only to the admissibility of extraneous-offense evidence, not the admissibility of evidence of the charged offense(s). *See* TEX. R. EVID. 404(b) ("Evidence of *other* crimes, wrongs or acts is not admissible . . . .") (emphasis added); *Rankin v. State*, 953 S.W.2d 740, 741 (Tex. Crim. App. 1996) ("An extraneous offense is defined as any act of misconduct, whether resulting in prosecution or not, that is *not shown in the charging papers*."). Thus, Rule 404(b)'s notice requirement did not apply to the jailhouse informant's testimony about Castillo's confession to the charged offenses. Accordingly, the trial court did not abuse its discretion in admitting that testimony.

introduce in the State's case-in-chief such evidence other than that arising in the same transaction.

TEX. R. EVID. 404(b).

The purpose of Rule 404(b)'s notice requirement is to prevent surprise to the defendant and apprise him of the offenses the State plans to introduce at trial. *See Hernandez*, 176 S.W.3d at 823-24; *Hayden v. State*, 66 S.W.3d 269, 272 (Tex. Crim. App. 2001). The rule requires "reasonable" notice. *Hayden*, 66 S.W.3d at 272.

The State's Notice of Intention to Use Evidence of Prior Convictions and Extraneous Offenses and Discovery Compliance, filed eleven days before trial, stated that Castillo was "a member of and is associated with a criminal street gang, namely, the Latin Kings," and that, on September 2, 2007, he engaged in "Deadly Conduct/Aggravated Assault/Discharging a firearm in the city limits of Bryan, Texas/Unlawfully Carrying a Weapon."

Castillo conclusorily complains, "[L]ooking at the [September 2, 2007] 'Act or Conduct' in the list provided by the State, no one could rationally conclude the State's notice information concerned [the jailhouse informant's] testimony about statements made to him by Appellant." Castillo argued to the trial court that deadly conduct, aggravated assault, and discharging a firearm were all different ways of committing the charged offense and therefore, the notice was not reasonable because it was not sufficient to distinguish between the charged offense and the gang-related shooting just before the charged offense. But the State points out that charged offenses would not be included in a notice of its intent to introduce extraneous offenses, so the notice would

only be for the drive-by shooting. Therefore, the trial court did not abuse its discretion in finding that the notice was reasonable. Moreover, we agree with the State's contention that the jailhouse informant's extraneous offense testimony was same-transaction contextual evidence, of which the State is not required to give notice. *See* TEX. R. EVID. 404(b).

Extraneous offenses may be admissible as same-transaction contextual evidence when "several crimes are intermixed, or blended with one another, or connected so that they form an indivisible criminal transaction." *Prible v. State*, 175 S.W.3d 724, 731-32 (Tex. Crim. App. 2005) (quoting *Rogers v. State*, 853 S.W.2d 29, 33 (Tex. Crim. App. 1993)). This type of evidence results when an extraneous matter is so intertwined with the State's proof of the charged crime that avoiding reference to it would make the State's case difficult to understand or incomplete. *Id.* at 732. Same-transaction contextual evidence is "admissible to show the context in which the criminal act occurred." *Wesbrook v. State*, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000). "[E]vents do not occur in a vacuum, and the jury has a right to hear what occurred immediately prior to and subsequent to the commission of that act so that it may realistically evaluate the evidence." *Id.*

There are two types of contextual evidence: (1) evidence of other offenses connected with the primary offense, referred to as same-transaction contextual evidence; and (2) general background evidence, referred to as background contextual evidence. *Mayes v. State*, 816 S.W.2d 79, 86-87 (Tex. Crim. App. 1991). Same-transaction contextual evidence is admissible as an exception under Rule 404(b) where such

evidence is necessary to the jury's understanding of the charged offense. *See Wyatt v. State*, 23 S.W.3d 18, 25 (Tex. Crim. App. 2000); *Rogers*, 853 S.W.2d at 33. Extraneous conduct is considered to be same-transaction contextual evidence when the charged offense would make little or no sense without also bringing in the same-transaction contextual evidence. *Rogers*, 853 S.W.2d at 33. Such evidence provides the jury information essential to understanding the context and circumstances of events that are blended or interwoven. *Camacho v. State*, 864 S.W.2d 524, 532 (Tex. Crim. App. 1993).

The purpose of admitting same-transaction contextual evidence is not to show that the extraneous charged offenses are part of a common scheme or that the charged offense was committed in an identical signature manner. *Jones v. State*, 962 S.W.2d 158, 166 (Tex. App.—Fort Worth 1998, no pet.). Nor is the purpose to show that the appellant committed the charged offense merely because he also committed the extraneous offense. *Id.* Rather, the purpose of admitting extraneous evidence as same-transaction contextual evidence is to put the instant offense in context. *Id.*; *Mayes*, 816 S.W.2d at 86-87; *Camacho*, 864 S.W.2d at 532.

The State introduced the jailhouse informant's extraneous-offense testimony because it included the acts that occurred just before the charged offenses and thus explained why Castillo would be fleeing from the police. The trial court did not abuse its discretion in admitting this evidence. It was same-transaction contextual evidence that put in context the offenses of aggravated assault on a public servant and evading arrest with a vehicle.

### C.  Rule 403

Finally, we address Castillo's argument that, regardless of the Rule 404(b) issue, the trial court abused its discretion in admitting the jailhouse informant's extraneous offense testimony under Rule 403 because the prejudicial effect of the evidence significantly outweighed its probative value.

Under Rule 403, otherwise relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence."  TEX. R. EVID. 403.

> [A] trial court, when undertaking a Rule 403 analysis, must balance (1) the inherent probative force of the proffered evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted.  Of course, these factors may well blend together in practice.

*Newton v. State*, 301 S.W.3d 315, 319 (Tex. App.—Waco 2009, pet. ref'd) (quoting *Gigliobianco v. State*, 210 S.W.3d 637, 641-42 (Tex. Crim. App. 2006) (footnote omitted)). We review the trial court's determination under Rule 403 for an abuse of discretion. *Mozon v. State*, 991 S.W.2d 841, 847 (Tex. Crim. App. 1999).

*Probative force of the evidence*:  When the accused claims self-defense or accident, the State, to show the accused's intent, may show other violent acts where the defendant was an aggressor.  *Johnson v. State*, 963 S.W.2d 140, 144 (Tex. App.—

Texarkana 1998, pet. ref'd); *Booker v. State*, 929 S.W.2d 57, 63 (Tex. App.—Beaumont 1996, pet. ref'd). Castillo's defense was that the gun accidentally fired during his struggle with Officer Rockett. Thus, the jailhouse informant's extraneous-offense evidence about Castillo being involved in a gang-related shooting just before he was stopped by the police is probative to the issue of intent to commit the charged offenses. This factor weighs in favor of admissibility.

*Proponent's need for that evidence*: Castillo's intent was the predominant issue in dispute at trial. Other than the fact that Castillo was riding in a pearl-colored car that matched one of the vehicles described as being possibly involved in the earlier shooting at Nicky's, there was very little, if any, other evidence to show why he would have committed the offenses of assault on a public servant and evading arrest with a vehicle. This factor thus weighs in favor of admissibility.

*Tendency of evidence to suggest a decision on an improper basis*: The trial court gave the standard limiting instruction for extraneous-offense evidence. We generally presume the jury follows the trial court's instructions in the manner presented. *Colburn v. State*, 966 S.W.2d 511, 520 (Tex. Crim. App. 1998). Thus, the extraneous-offense evidence had limited potential to impress the jury in an irrational way. This factor does not weigh in favor of exclusion of the evidence.

*Jury confusion or distraction, undue weight, and amount of time or repetition*: These factors concern whether presentation of the evidence consumed an inordinate amount of time or was repetitious, and the evidence's tendency to confuse or distract the jury or to cause the jury to place undue weight on its probative value. *See Gigliobianco*, 210

S.W.3d at 641-42; *Newton*, 301 S.W.3d at 320. The jailhouse informant's entire testimony was only thirty-five pages of the reporter's record. His testimony regarding the extraneous offense was not repetitious, and we do not believe that it could cause jury confusion or distraction or cause the jury to give it undue weight, especially given the trial court's limiting instruction. All of these factors thus favor admission.

Rule 403 "envisions exclusion of [relevant] evidence only when there is a 'clear disparity between the degree of prejudice of the offered evidence and its probative value.'" *Hammer v. State*, 296 S.W.3d 555, 568 (Tex. Crim. App. 2009) (quoting *Conner v. State*, 67 S.W.3d 192, 202 (Tex. Crim. App. 2001)). We cannot say that there is a "clear disparity" between the danger of unfair prejudice posed by the extraneous-offense evidence and its probative value. Thus, the trial court did not abuse its discretion by overruling Castillo's Rule 403 objection to the jailhouse informant's extraneous offense testimony.

Castillo also complains in this issue that the trial court abused its discretion in admitting testimony from the State's investigator regarding an alleged retaliation statement made by Castillo under Rule 403 because the prejudicial effect of the evidence significantly outweighed its probative value.

Michael Jones, an investigator with the Brazos County District Attorney's Office, testified that he transferred the jailhouse informant from the jail to the courtroom and then back to the jail after he had testified. As Jones was taking the jailhouse informant back to the jail, Jones witnessed Castillo threaten the jailhouse informant. Castillo ran from his holding cell up to a window near where the jailhouse informant was standing,

pointed at him, and said, "I got you. I got you, bitch." Jones then yelled at Castillo to get back into his cell when he heard Castillo say either "I'm going to cap you" or "I'm going to put a cap in you."

*Probative force of the evidence*: As stated above, when the accused claims self-defense or accident, the State, to show the accused's intent, may show other violent acts where the defendant was an aggressor. *Johnson*, 963 S.W.2d at 144; *Booker*, 929 S.W.2d at 63. Castillo's defense was that the gun accidentally fired during his struggle with Officer Rockett. Thus, Jones's testimony that Castillo threatened to "cap" the jailhouse informant just after he had testified is probative because it assists the jury in determining Castillo's intent. This factor weighs in favor of admissibility.

*Proponent's need for that evidence*: As explained above, Castillo's intent was the predominant issue at trial. Thus, evidence that assists the jury in determining his intent is very important. This factor thus weighs in favor of admissibility.

*Tendency of evidence to suggest a decision on an improper basis*: As explained above, the trial court gave a limiting instruction on extraneous-offense evidence, and we generally presume the jury follows the trial court's instructions in the manner presented. *Colburn*, 966 S.W.2d at 520. Thus, the extraneous-offense evidence had limited potential to impress the jury in an irrational way. This factor does not weigh in favor of exclusion of the evidence.

*Jury confusion or distraction, undue weight, and amount of time or repetition*: Jones's testimony was only about fourteen pages of the reporter's record. It was not repetitious, and we do not believe that it could cause jury confusion or distraction or

cause the jury to give it undue weight, especially since the trial court gave a limiting instruction to the jury. All of these factors thus favor admission.

In light of the foregoing, we cannot say that there is a "clear disparity" between the danger of unfair prejudice posed by the extraneous-offense evidence and its probative value. Thus, the trial court did not abuse its discretion by overruling Castillo's Rule 403 objection to Jones's testimony regarding the alleged retaliation statement made by Castillo. We overrule Castillo's second issue.

## IV. SUFFICIENCY OF THE EVIDENCE

In his third issue, Castillo contends that the evidence is legally and factually insufficient to find him guilty of a third-degree felony of evading arrest with a vehicle, and in his fourth issue, he contends that the evidence is legally and factually insufficient to find him guilty of possession of a controlled substance with intent to deliver (one gram or more but less than four grams).

After Castillo filed his brief in this case, the court of criminal appeals held that there is "no meaningful distinction between the *Jackson v. Virginia* legal-sufficiency standard and the *Clewis* factual-sufficiency standard" and that "the *Jackson v. Virginia* legal-sufficiency standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt. All other cases to the contrary, including *Clewis*, are overruled." *Brooks v. State*, 323 S.W.3d 893, 902, 912 (Tex. Crim. App. 2010). Accordingly, we will apply the same standard of review to all of Castillo's sufficiency complaints.

The Court of Criminal Appeals has expressed our standard of review of a sufficiency issue as follows:

> In determining whether the evidence is legally sufficient to support a conviction, a reviewing court must consider all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational fact finder could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). This "familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. "Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Hooper*, 214 S.W.3d at 13.

*Lucio v. State*, No. AP-76,020, --- S.W.3d ---, ---, 2011 WL 4347044, at *16 (Tex. Crim. App. Sept. 14, 2011).

The Court of Criminal Appeals has also explained that our review of "all of the evidence" includes evidence that was properly and improperly admitted. *Conner v. State*, 67 S.W.3d 192, 197 (Tex. Crim. App. 2001). And if the record supports conflicting inferences, we must presume that the factfinder resolved the conflicts in favor of the prosecution and therefore defer to that determination. *Jackson*, 443 U.S. at 326. Further, direct and circumstantial evidence are treated equally: "Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt." *Hooper*, 214 S.W.3d at 13. Finally, it is well established that the factfinder is entitled to judge the credibility of witnesses and can choose to believe all, some, or none of the testimony presented by the parties. *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991).

## A. Third-Degree Felony Evading Arrest with a Vehicle

"A person commits an offense if he intentionally flees from a person he knows is a peace officer attempting lawfully to arrest or detain him."  Act of May 25, 2001, 77th Leg., R.S., ch. 1480, 2001 Tex. Gen. Laws 5265, 5265 (amended 2009, 2011) (current version at TEX. PENAL CODE ANN. § 38.04 (West 2011)).  While the offense of evading arrest or detention is ordinarily a misdemeanor, it becomes a state-jail felony if "the actor uses a vehicle while the actor is in flight."  *Id.*  The offense then becomes a felony of the third degree if "the actor uses a vehicle while the actor is in flight and the actor has been previously convicted" of evading arrest or detention, or "another suffers serious bodily injury as a direct result of an attempt by the officer from whom the actor is fleeing to apprehend the actor while the actor is in flight."  *Id.*

Castillo argues that the evidence is insufficient to find him guilty of third-degree felony evading arrest with a vehicle because, during the guilt-innocence phase of the trial, the State did not introduce evidence of any prior convictions that he had for evading arrest or detention, nor did the evidence reveal that Officer Nunn had suffered serious bodily injury after the gun went off inside the vehicle.  The State does not dispute this.  Instead, the State contends that the punishment range was properly enhanced from a state-jail felony to a third-degree felony because the jury made an affirmative deadly-weapon finding, and the evidence shows that Castillo did, in fact, use or exhibit a deadly weapon, namely a firearm, during the commission of the offense.  *See* TEX. PENAL CODE ANN. § 12.35(c)(1) (West 2011) (elevating a state-jail felony to a third-degree felony upon a deadly-weapon finding).

Castillo argues that the felony offense of evading arrest does not include the use or exhibition of a deadly weapon and cites dicta in *Alejos v. State*, 555 S.W.2d 444, 449 (Tex. Crim. App. 1977). However, the offense of evading arrest with a vehicle is susceptible to an affirmative deadly-weapon finding. *See State v. Brown*, 314 S.W.3d 487, 488-91 (Tex. App.—Texarkana 2010, no pet.); *Garza v. State*, 298 S.W.3d 837, 843-44 (Tex. App.—Amarillo 2009, no pet.). Furthermore, a sentencing enhancement that increases punishment beyond the maximum statutory sentence is the functional equivalent of an element of a greater offense. *Apprendi v. New Jersey*, 530 U.S. 466, 494 n.19, 120 S.Ct. 2348, 2365 n.19, 147 L.Ed.2d 435 (2000). Viewing all the evidence in the light most favorable to the verdict, we conclude that a rational trier of fact could have found Castillo guilty of the offense of evading arrest with a vehicle beyond a reasonable doubt and could have found beyond a reasonable doubt that he used or exhibited a deadly weapon during that offense's commission. We thus overrule Castillo's third issue.

### B.   Possession of a Controlled Substance with Intent to Deliver

To prove that Castillo committed the offense of possession of a controlled substance with intent to deliver, the State was required to establish that he knowingly possessed a controlled substance, namely, cocaine, in an amount of one gram or more but less than four grams by aggregate weight, including adulterants and dilutants, with the intent to deliver it. *See* TEX. HEALTH & SAFETY CODE ANN. §§ 481.102(3)(D), 481.112(a), (c) (West 2010). Castillo does not dispute that he possessed cocaine; rather, he argues that the evidence is insufficient to show that he had the intent to deliver it.

"Deliver" means to transfer, actually or constructively, a controlled substance to

another. TEX. HEALTH & SAFETY CODE ANN. § 481.002 (West 2010). Intent to deliver a controlled substance may be proven by circumstantial evidence. *Patterson v. State*, 138 S.W.3d 643, 649 (Tex. App.—Dallas 2004, no pet.). Factors courts have considered include the following: (1) the nature of the location where the accused was arrested; (2) the quantity of contraband in the accused's possession; (3) the manner of packaging; (4) the presence or lack thereof of drug paraphernalia (for either use or sale); (5) the accused's possession of large amounts of cash; and (6) the accused's status as a drug user. *Moreno v. State*, 195 S.W.3d 321, 325-26 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd). The number of factors present is not as important as the logical force the factors have in establishing the elements of the offense. *Id.* at 326. Intent can also be inferred from the acts, words, and conduct of the accused. *Id.*; *see Patrick v. State*, 906 S.W.2d 481, 487 (Tex. Crim. App. 1995). Also, expert testimony by experienced law enforcement officers may be used to establish an accused's intent to deliver. *See Mack v. State*, 859 S.W.2d 526, 529 (Tex. App.—Houston [1st Dist.] 1993, no pet.).

Here, Veronica Casas testified that she lived at the home where Castillo was found. Before the police arrived, Castillo gave her a bag and said, "Get rid of this." When the police officer arrived, she gave the bag to him. Police Sergeant Walter Melnyk testified that Casas handed him a plastic baggy that contained two smaller baggies containing a white, powdery substance that appeared to be cocaine. When Sergeant Melnyk was asked if, based on his training and experience, the amount of cocaine that was recovered was consistent with personal use, he replied, "I have recovered this amount of cocaine before that has been what we would probably

consider for personal use; but based on all the circumstances surrounding this, I don't think it would be just for personal use only." Sergeant Melnyk explained, "The fact that it's packaged separately into two separate containers and further into a larger plastic baggy would indicate that it may be probably for sale instead of -- a personal use you're only going to find one smaller amount, one packaged all by itself." Furthermore, he believed that money was found on Castillo at the time of his arrest, and he was not aware of any evidence that was collected that would suggest personal use in this case. Sergeant Melnyk also stated that the amount of cocaine that he typically sees for personal use is about a gram; however, he acknowledged on cross-examination that this is not his area of expertise and he did not know the street value of the cocaine.

Officer Jaime Harvey testified that he went with Castillo to the hospital, where he recovered Castillo's clothing and belongings and found $170 (25 one-dollar bills, 13 five-dollar bills, and 8 ten-dollar bills) in Castillo's pocket. *See Moreno*, 195 S.W.3d at 325-26 (accused's possession of large amounts of cash is one factor courts have considered in determining intent to deliver).

Castillo argues that this evidence is insufficient to establish that he had the intent to deliver the cocaine because the facts are equally consistent with the conclusion that he possessed the cocaine for personal use. Castillo states that neither Sergeant Melnyk nor Officer Harvey testified that Castillo was in a high-crime area where drug houses were located; no evidence was presented that Castillo had been previously convicted of possession of a controlled substance; and no evidence was presented that he was under the influence of any drug. Castillo also questions the testimony of Sergeant Melnyk

because he could not testify to the drug's street value, nor was he sure how much one person would use at one time.

The jury is the exclusive judge of the facts, the credibility of the witnesses, and the weight to be given to the witnesses' testimony. *Jaggers v. State*, 125 S.W.3d 661, 672 (Tex. App.—Houston [1st Dist.] 2003, pet. ref'd). As the reviewing court, we "should not substantially intrude upon the jury's role as the sole judge of the weight and credibility of witness testimony." *Vasquez v. State*, 67 S.W.3d 229, 236 (Tex. Crim. App. 2002). Here, by finding Castillo guilty, the jury obviously relied on the State's evidence and the reasonable inferences therefrom and rejected Castillo's argument. Viewing all the evidence in the light most favorable to the verdict, we conclude that a rational trier of fact could have found Castillo guilty of the offense of possession of a controlled substance with intent to deliver (one gram or more but less than four grams) beyond a reasonable doubt. We overrule Castillo's fourth issue.

## V.   CONCLUSION

Having overruled all Castillo's issues, we affirm the trial court's judgment.


REX D. DAVIS
Justice

Before Chief Justice Gray,
      Justice Davis, and
      Justice Scoggins
Affirmed
Opinion delivered and filed October 26, 2011
Do not publish
[CRPM]