ACCEPTED
13-14-00675-CR
THIRTEENTH COURT OF APPEALS
CORPUS CHRISTI, TEXAS
11/9/2015 9:52:26 AM
Dorian E. Ramirez
CLERK

## CAUSE NO. 13-14-00675-CR

FILED IN
13th COURT OF APPEALS
CORPUS CHRISTI/EDINBURG, TEXAS
11/9/2015 9:52:26 AM
DORIAN E. RAMIREZ
Clerk

## IN THE COURT OF APPEALS

## THIRTEENTH JUDICIAL DISTRICT OF TEXAS

## CORPUS CHRISTI - EDINBURG, TEXAS

**EDGAR GARCES DIAZ,**
**Appellant**

**v.**

**STATE OF TEXAS,**
**Appellee.**

**On appeal from the 357th Judicial District Court
of Cameron County, Texas
Trial Court Cause Number 2014-DCR-215-E**

## STATE'S APPELLATE BRIEF

**ORAL ARGUMENT REQUESTED**

**Luis V. Saenz**
**Cameron County District Attorney**

**René B. González**
**Assistant District Attorney**
964 East Harrison Street, 4thFloor
Brownsville, Texas  78520
Phone: (956) 544-0849
Fax:(956) 544-0869

**Attorneys for the State of Texas**

# TABLE OF CONTENTS

Table of Contents. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  i

Index of Authorities.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

Salutation.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Summary of the Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Argument and Authorities.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

    State's Response to Appellant's First Issue on Appeal. . . . . . . . . . . . . . . 3

    State's Response to Appellant's Second Issue on Appeal. . . . . . . . . . . . . 18

    State's Response to Appellant's Third Issue on Appeal. . . . . . . . . . . . . . 22

    State's Response to Appellant's Fourth Issue on Appeal.. . . . . . . . . . . . . 29

Prayer.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

Certificate of Compliance. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

Certificate of Service.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

# INDEX OF AUTHORITIES

**<u>Case law</u>**                                                              **<u>Page</u>**

*Abdnor v. State*,
  871 S.W.2d 726 (Tex. Crim. App. 1994). . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Aguirre v. State*,
  695 S.W.2d 793 (Tex. App.--San Antonio 1985, no pet.). . . . . . . . . . . . . 33

*Allen v. McCotter*,
  804 F.2d 1362 (5th Cir. 1986). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

*Almanza v. State*,
  686 S.W.2d 157 (Tex. Crim. App. 1984). . . . . . . . . . . . . . . . . . . . . . . . . 23

*Amador v. State*,
  221 S.W.3d 666 (Tex. Crim. App. 2007). . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Arline v. State*,
  721 S.W.2d 348 (Tex. Crim. App. 1986). . . . . . . . . . . . . . . . . . . . . . . . . 23

*Armstead v. State*,
  978 So.2d 642 (Miss. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Ashley v. State*,
  404 S.W.3d 672 (Tex. App.--El Paso 2013, no pet.). . . . . . . . . . . . . . . . . 30

*Barrios v. State*,
  283 S.W.3d 348 (Tex. Crim. App. 2009). . . . . . . . . . . . . . . . . . . . . . . . . 22

*Benavides v. State*,
  763 S.W.2d 587 (Tex. App.--Corpus Christi 1988, pet. ref'd) . . . . . . . . . 27

*Berghuis v. Thompkins*,
  560 U.S. 370 (2010). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Best v. State*,
118 S.W.3d 857 (Tex. App.--Fort Worth 2003, no pet.). . . . . . . . . . . . . . . 4

*Bottom v. State*,
860 S.W.2d 266 (Tex. App.--Fort Worth 1993, no pet.). . . . . . . . . . . . . . 33

*Bram v. United States*,
168 U.S. 532 (1897). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Brisbon v. United States*,
957 A.2d 931, 946 (D.C. App. 2008). . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Brooks v. State*,
323 S.W.3d 893 (Tex. Crim. App. 2010). . . . . . . . . . . . . . . . . . . . . . . . . 19

*Bussell v. State*,
98 Tex. Crim. 170, 265 S.W. 164 (1924). . . . . . . . . . . . . . . . . . . . . . . . . 24

*Commonwealth v. Raymond*,
424 Mass. 382, 676 N.E.2d 824 (1997). . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Contreras v. State*,
312 S.W.3d 566 (Tex. Crim. App. 2010). . . . . . . . . . . . . . . . . . . . . . . . . 18

*Cooksey v. State*,
No. 05-08-01343-CR, 2009 WL 2488509 (Tex. App.--
Dallas Aug. 17, 2009, pet. ref'd).. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Curry v. State*,
30 S.W.3d 394 (Tex. Crim. App. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Dowthitt v. State*,
931 S.W.2d 244 (Tex. Crim. App. 1996). . . . . . . . . . . . . . . . . . . . . . . . 7, 8

*Esquivel v. State*,
No. 04-08-00730-CR, 2009 WL 3222626 (Tex App.--
San Antonio Oct. 7, 2009, no pet.). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Gonzales v. State*,
  515 S.W.2d 920 (Tex. Crim. App. 1974). . . . . . . . . . . . . . . . . . . . . . . 31, 33

*Harris v. South Carolina*,
  338 U.S. 68 (1949). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Harris v. State*,
  164 S.W.3d 775 (Tex. App.--Houston [14th Dist.] 2005, pet. ref'd). . . . . . 20

*Heard v. State*,
  887 S.W.2d 94 (Tex. App.--Texarkana 1994, pet. ref'd). . . . . . . . . . . . 31, 33

*Hudson v. State*,
  128 S.W.3d 367 (Tex. App.--Texarkana 2004, no pet.). . . . . . . . . . . . . . . 32

*Illinois v. Allen*,
  397 U.S. 337 (1970). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Johnson v. State*,
  68 S.W.3d 644 (Tex. Crim. App. 2002). . . . . . . . . . . . . . . . . . . . . . . . 4, 5

*Jones v. State*,
  984 S.W.2d 254 (Tex. Crim. App. 1998). . . . . . . . . . . . . . . . . . . . . . . . 19

*Kelly v. Lynaugh*,
  862 F.2d 1126 (5th Cir. 1988). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Kihega v. State*,
  392 S.W.3d 828 (Tex. App.--Texarkana 2013, no pet.). . . . . . . . . . . . . 22, 29

*King v. State*,
  29 S.W.3d 556 (Tex. Crim. App. 2000). . . . . . . . . . . . . . . . . . . . . . . . . 20

*Kupferer v. State*,
  408 S.W.3d 485 (Tex. App.--Houston [1st Dist.] 2013, pet. ref'd). . . . . . . . 9

*Losada v. State*,
721 S.W.2d 305 (Tex. Crim. App. 1986). . . . . . . . . . . . . . . . . . . . . . . . . 19

*Luna v. State*,
301 S.W.3d 322 (Tex. App.--Waco 2009, no pet.).. . . . . . . . . . . . . . . . . . . 8

*Lynumn v. Illinois*,
372 U.S. 528 (1963). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Maestes v. State*,
987 S.W.2d 59 (Tex. Crim. App. 1999). . . . . . . . . . . . . . . . . . 12, 13, 14, 15

*Maines v. State*,
170 S.W.3d 149 (Tex. App.--Eastland 2005, no pet.). . . . . . . . . . . . . . . . . 32

*Malloy v. Hogan*,
378 U.S. 1 (1964). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Marshall v. State*,
210 S.W.3d 618 (Tex. Crim. App. 2006). . . . . . . . . . . . . . . . . . . . . . . . . 7

*Mayes v. State*,
8 S.W.3d 354 (Tex. App.--Amarillo 1999, no pet.). . . . . . . . . . . . . . . . . . . 9

*McCall v. State*,
14 Tex. Ct. App. 353 (1883). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 24

*Michigan v. Mosley*,
423 U.S. 96 (1975). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 10, 11

*Miller v. State*,
692 S.W.2d 88 (Tex. Crim. App. 1985). . . . . . . . . . . . . . . . . . . . . . . . . 30

*Miranda v. Arizona*,
384 U.S. 436 (1966). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7, 11

*Montanez v. State*,
195 S.W.3d 101 (Tex. Crim. App. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Moore v. State*,
670 S.W.2d 259 (Tex. Crim. App. 1984). . . . . . . . . . . . . . . . . . . . . . 31, 32

*Muniz v. State*,
851 S.W.2d 238 (Tex. Crim. App. 1993). . . . . . . . . . . . . . . . . . . . . . . . . 20

*Ngo v. State*,
175 S.W.3d 738 (Tex. Crim. App. 2005). . . . . . . . . . . . . . . . . . . . . . . . . 23

*Papakostas v. State*,
145 S.W.3d 723 (Tex. App.--Corpus Christi 2004, no pet.). . . . . . . . . . . . 31

*Ramos v. State*,
245 S.W.3d 410 (Tex. Crim. App. 2008). . . . . . . . . . . . . . . . . . . . . . . . 6, 7

*Rogers v. Richmond*,
365 U.S. 534 (1961). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Romero v. State*,
800 S.W.2d 539 (Tex. Crim. App. 1990). . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Salinas v. State*,
163 S.W.3d 734 (Tex. Crim. App. 2005). . . . . . . . . . . . . . . . . . . . . . . . . 19

*Sanchez v. State*,
842 S.W.2d 732 (Tex. App.--San Antonio 1992, pet. ref'd). . . . . . . . . 32, 33

*Sharp v. State*,
707 S.W.2d 611 (Tex. Crim. App. 1986). . . . . . . . . . . . . . . . . . . . . . . . . 19

*Shelby v. State*,
724 S.W.2d 138 (Tex. App.--Dallas 1987) (op. on reh'g)
*vacated on other grounds*, 761 S.W.2d 5 (Tex. Crim. App. 1988). . . . 26, 27

*Sparks v. State*,
    108 Tex. Crim. 367, 300 S.W. 938 (1927). . . . . . . . . . . . . . . . . . . . . . . . . . 24

*State v. Kelly*,
    204 S.W.3d 808 (Tex. Crim. App. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*State v. Perez*,
    124 Ohio St.3d 122, 920 N.E.2d 104 (2009) . . . . . . . . . . . . . . . . . . . . . . . 16

*State v. Ross*,
    32 S.W.3d 853 (Tex. Crim. App. 2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Taylor v. United States*,
    414 U.S. 17 (1973). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30, 32

*Thomas v. State*,
    578 S.W.2d 691 (Tex. Crim. App. 1979). . . . . . . . . . . . . . . . . . . . . . . . . . 27

*Thompson v. Haley*,
    255 F.3d 1292 (11th Cir. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Tracy v. State*,
    14 S.W.3d 820 (Tex. App.--Dallas 2000, pet. ref'd). . . . . . . . . . . . . . . . . 30

*United States v. Alvarado-Saldivar*,
    62 F.3d 697 (5th Cir. 1995). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*United States v. Hernandez*,
    574 F.2d 1362 (5th Cir. 1978). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*United States v. Johnson*,
    351 F.3d 254 (6th Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

*Valtierra v. State*,
    310 S.W.3d 442 (Tex. Crim. App. 2010). . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Watson v. State*,
     762 S.W.2d 591 (Tex. Crim. App. 1988). . . . . . . . . . . . . . . . . . . . . . . . . . 8

*West v. Johnson*,
     92 F.3d 1385 (5th Cir. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Wiede v. State*,
     214 S.W.3d 17 (Tex. Crim. App. 2007). . . . . . . . . . . . . . . . . . . . . . . . 4, 5

*William v. State*,
     257 S.W.3d 426 (Tex. App.--Austin 2008, pet. ref'd). . . . . . . . . . . . . . . . . 9

 **Statutes**

Tex. Code Crim. Proc. art. 33.03.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

Tex. Code Crim. Proc. art. 36.19.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Tex. Code Crim. Proc. art. 37.07, § 2(b).. . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

Tex. Penal Code § 36.06. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

U.S. Const. amends. V & XIV. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

**Rules**

Tex. R. App. P. 21.2. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

Tex. R. App. P. 33.1(a)(1). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

# CAUSE NO. 13-14-00675-CR
_____

# IN THE COURT OF APPEALS

# THIRTEENTH JUDICIAL DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG, TEXAS
_____

# EDGAR GARCES DIAZ, Appellant

# v.

# STATE OF TEXAS, Appellee
_____

# STATE'S APPELLATE BRIEF
_____

**TO THE HONORABLE COURT OF APPEALS:**

**COMES NOW**, Appellee, the **STATE OF TEXAS**, by and through the Cameron County District Attorney, the Honorable Luis V. Saenz, and, pursuant to Rule 38.2 of the Texas Rules of Appellate Procedure, files this, its Appellate Brief in the above-styled and -numbered cause of action, and in support thereof, would show this Honorable Court as follows:

## SUMMARY OF ARGUMENT

Appellant raises four issues on appeal. (1) In his first issue, Appellant argues that the trial court erred in denying his motion to suppress his video

statements to police. Appellant argues two separate basis in support of this issue: first, that his statements should have been suppressed because police re-initiated their interrogation of Appellant after Appellant invoked his right to terminate the interview; and second, that the threats by police, to arrest Appellant's family members, rendered Appellant's statements involuntary. The State responds by asserting that the police scrupulously honored Appellant's request to terminate the interview, and further, the threats by police to arrest Appellant's family members did not render Appellant's statement involuntary because, police had a basis in fact for threatening to arrest the family members. (2) In Appellant's second issue, he challenges the sufficiency of the evidence. Specifically, appellant contends the evidence is insufficient to show he murdered the victim herein in the course of course of committing retaliation. The State responds by noting that the evidence is legally sufficient to support a capital murder conviction. (3) In his third issue, Appellant complains that the trial court refused to include a "benefit of the doubt" instruction in the jury charge. The State concedes that where an offense consists of different degrees, a charge giving the defendant the benefit of a reasonable doubt between the degrees would be proper, and it would be error ordinarily in such case to refuse such a charge when requested. Although the State concedes error, the State nevertheless asserts that this Court should determine that no harm

befell Appellant as a result of that error. (4) In his fourth issue, Appellant complains that the trial court erred in sentencing Appellant *in absentia*. The State responds by asserting that the trial court's decision to proceed with the punishment phase in Appellant's absence was not an abuse of discretion.

## ARGUMENT & AUTHORITIES

### State's Response to Appellant's First Issue

In his first issue, Appellant argues that the trial court erred in denying his motion to suppress his video statements to police. Appellant argues two separate basis in support of this issue: first, that his statements should have been suppressed because police re-initiated their interrogation of Appellant after Appellant invoked his right to terminate the interview; and second, that the threats by police, to arrest Appellant's family members, rendered Appellant's statements involuntary. The State responds by asserting that the police scrupulously honored Appellant's request to terminate the interview, and further, the threats by police to arrest Appellant's family members did not render Appellant's statement involuntary because, police had a basis in fact for threatening to arrest the family members.

*Standard of Review*

This Court reviews the trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007). In reviewing the trial court's decision, this Court does not engage in its own factual review. *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); *Best v. State*, 118 S.W.3d 857, 861 (Tex. App.--Fort Worth 2003, no pet.). The trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *Wiede v. State*, 214 S.W.3d 17, 24–25 (Tex. Crim. App. 2007); *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000), *modified on other grounds by State v. Cullen*, 195 S.W.3d 696 (Tex. Crim. App. 2006). Therefore, this Court must give almost total deference to the trial court's rulings on (1) questions of historical fact, even if the trial court's determination of those facts was not based on an evaluation of credibility and demeanor; and (2) application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor. *Amador*, 221 S.W.3d at 673; *Montanez v. State*, 195 S.W.3d 101, 108-09 (Tex. Crim. App. 2006); *Johnson v. State*, 68 S.W.3d 644, 652-53 (Tex. Crim. App. 2002). But when application-of-law-to-fact questions do not turn on the credibility and demeanor of the witnesses, we review the trial court's rulings on those questions *de novo*. *Amador*, 221 S.W.3d at 673;

*Johnson*, 68 S.W.3d at 652–53.

When reviewing the trial court's ruling on a motion to suppress, this Court must view the evidence in the light most favorable to the trial court's ruling. *Wiede*, 214 S.W.3d at 24; *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). When the trial court makes explicit fact findings, this Court determines whether the evidence, when viewed in the light most favorable to the trial court's ruling, supports those fact findings. *Kelly*, 204 S.W.3d at 818-19. A reviewing court must then review the trial court's legal ruling *de novo* unless its explicit fact findings that are supported by the record are also dispositive of the legal ruling. *Id*. at 819. In the absence of explicit findings, the appellate court assumes the trial court made implicit findings that support its ruling as long as those findings are supported by the record. *Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010).

The trial court failed to make findings of fact and conclusions of law in the present case; therefore, this Court should assume that the trial court made implicit findings that support the denial of the motion to suppress, so long as these findings are supported by the record. *Id*.

*Appellant did not Unequivocally Assert his Right to Remain Silent*

Appellant argues that he invoked his right to remain silent and the police officers failed to scrupulously honor the assertion of that right. In support of his argument, Appellant points to his statement that he wanted to go back to his cell, at the end of the first interview.

The Fifth Amendment to the United States Constitution, made applicable to the states through the Fourteenth Amendment, provides that no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const. amends. V & XIV; *see also Malloy v. Hogan*, 378 U.S. 1, 8 (1964); *Ramos v. State*, 245 S.W.3d 410, 418 (Tex. Crim. App. 2008). The protection against self-incrimination is violated when a law enforcement officer has elicited an involuntary confession from a criminal defendant. *Bram v. United States*, 168 U.S. 532, 542-43 (1897); *see also Rogers v. Richmond*, 365 U.S. 534, 544 (1961). A confession is presumed to be involuntary if it was made pursuant to a custodial interrogation and without adequate warnings to protect the privilege against self-incrimination. *Miranda v. Arizona*, 384 U.S. 436, 478 (1966).

Consistent with this protection against self-incrimination, law enforcement officials, before questioning a person in custody, must inform him that he has a right to remain silent and that any statement he makes may be used against him in

court. *Berghuis v. Thompkins*, 560 U.S. 370 (2010); *Miranda*, 384 U.S. at 444-45, 478-79. The right to remain silent requires the police to immediately cease custodial interrogation when a suspect "indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent." *Ramos*, 245 S.W.3d at 418 (*quoting Miranda*, 384 U.S. at 473-74).

The exercise of the right to remain silent must be "scrupulously honored." *Michigan v. Mosley*, 423 U.S. 96, 104 (1975); *Ramos*, 245 S.W.3d at 418. A failure to stop questioning after a suspect in custody invokes his right to remain silent violates his constitutional rights and renders any subsequently obtained statements inadmissible. *Dowthitt v. State*, 931 S.W.2d 244, 257 (Tex. Crim. App. 1996). But an officer is not required to ask clarifying questions and, if the suspect's statement is not an unambiguous or unequivocal request to terminate the interview or to invoke the right to silence, the officer has no obligation to stop questioning him. *Berghuis*, 130 S. Ct. at 2259-60 ("If an accused makes a statement concerning the right to counsel 'that is ambiguous or equivocal' or makes no statement, the police are not required to end the interrogation or ask questions to clarify whether the accused wants to invoke his or her *Miranda* rights" and there is no principled reason to apply different standard for invocation of right to remain silent); *Marshall v. State*, 210 S.W.3d 618, 628 (Tex. Crim.

App. 2006) (when invocation of right to remain silent is ambiguous, officer can either continue questioning "regarding the offense" or stop questioning and clarify whether suspect wanted to remain silent); *Dowthitt*, 931 S.W.2d at 257. Ambiguity exists when the suspect's statement is subject to more than one reasonable interpretation under the circumstances. *Luna v. State*, 301 S.W.3d 322, 325 (Tex. App.--Waco 2009, no pet.); *see also Dowthitt*, 931 S.W.2d at 257. In determining whether the right to remain silent was unambiguously invoked, courts look to the totality of the circumstances. *Watson v. State*, 762 S.W.2d 591, 597 (Tex. Crim. App. 1988); *Luna*, 301 S.W.3d at 325.

At the beginning of the first interview, Officer Ramos read the Appellant his rights and confirmed that Appellant understood his rights. Officer Ramos then asked Appellant whether he wanted to waive those rights and talk to him. Appellant waived his rights and spoke to Officer Ramos for more than an hour. At some point, Appellant became visibly frustrated and told Officer Ramos "I want to go back to my cell... ." A few more words were said by Appellant, and then Ramos terminated the interview, and advised Appellant he would have a jailer escort him to his cell. (R.R. Vol. 11, DX 1).

Appellant contends that this statement was an invocation of his right to remain silent. Considering the totality of the circumstances, Appellant's

statement, "I want to go back to my cell," was not a clear, unequivocal and unambiguous invocation of his right to remain silent. *See Kupferer v. State*, 408 S.W.3d 485 (Tex. App.--Houston [1st Dist.] 2013, pet. ref'd) (defendant's statement that "I really don't want to talk about it, but I mean. . ." was not unambiguous invocation of right to remain silent); *William v. State*, 257 S.W.3d 426, 433-34 (Tex. App.--Austin 2008, pet. ref'd) (defendant's statement that "I want to terminate everything right now" was ambiguous given defendant's prior statements, his frustration at his detention, and his attempt to determine whether he had been arrested); *Mayes v. State*, 8 S.W.3d 354, 359 (Tex. App.--Amarillo 1999, no pet.) (statement by defendant that she did not know if she wanted to talk followed immediately by denial of wrongdoing was not unambiguous assertion of right to remain silent); *see also Cooksey v. State*, No. 05-08-01343-CR, 2009 Tex. App. LEXIS 6390, 2009 WL 2488509, at *2 (Tex. App.--Dallas Aug. 17, 2009, pet. ref'd) (mem. op., not designated for publication) (statement that "I don't have anything to say" was ambiguous and did not require police officer to stop questioning defendant); *Esquivel v. State*, No. 04-08-00730-CR, 2009 Tex. App. LEXIS 7789, 2009 WL 3222626, at *4 (Tex App.--San Antonio Oct. 7, 2009, no pet.) (mem. op., not designated for publication) (statement that defendant did not want to talk to detective was ambiguous in light of defendant continuing to talk to

detective).

Therefore, this Court should find that the Appellant's statement "I want to go back to my cell," did not unambiguously and unequivocally assert his right to remain silent, and therefore, this Court should deny the Defendant's Motion to Suppress Evidence.

*Officers did Scrupulously Honor Appellant's Assertion of His Right*

Even were this Court to find that Appellant did unambiguously and unequivocally assert his right to remain silent, this Court should nevertheless affirm the trial court's decision to deny the Appellant's Motion to Suppress because police did scrupulously honor the Appellant's purported assertion of his right.

In *Michigan v. Mosley*, 423 U.S. 96 (1975), the Supreme Court explained that no passage in the *Miranda* opinion "can sensibly be read to create a *per se* proscription of indefinite duration upon any further questioning by any police officer on any subject, once the person in custody has indicated a right to remain silent." *Mosley*, 423 U.S. at 102-103. The Court continued:

> A reasonable and faithful interpretation of the *Miranda* opinion must rest on the intention of the Court in that case to adopt 'fully effective means...to notify the person of his right of silence and to assure that

the exercise of the right will be scrupulously honored...' 384 U.S. at 479. The critical safeguard identified in the passage at the time is a person's 'right to cut off questioning.' *Id.*, at 474. Through the exercise of his option to terminate questioning he can control the time at which questioning occurs, the subjects discussed, and the duration of the interrogation. The requirement that law enforcement authorities must respect a person's exercise of that option counteracts the coercive pressures of the custodial setting. We therefore conclude that the admissibility of statements obtained after the person in custody has decided to remain silent depends under *Miranda* on whether his 'right to cut off questioning' was 'scrupulously honored.'

*Mosley*, 423 U.S. at 103-104 (footnotes omitted). Applying the facts herein to the law set forth in *Mosley*, this Court should conclude that admission of the defendant's second and third statements herein do not violate his right to remain silent.

In *Mosley*, The Supreme Court found the following factors important to this analysis: (1) whether the suspect was informed of his right to remain silent prior to the initial questioning; (2) whether the suspect was informed of his right to remain silent prior to the subsequent questioning; (3) the length of time between initial questioning and subsequent questioning; (4) whether the subsequent questioning focused on a different crime; and (5) whether police honored the suspect's initial invocation of the right to remain silent. Thus, *Mosley* created an *ad hoc* test in which "courts must evaluate the facts of each case to determine if the resumption of police interrogation was consistent with scrupulous observance of the right to

cut off questioning." *Maestes v. State*, 987 S.W.2d 59, 62 (Tex. Crim. App. 1999), *quoting United States v. Alvarado-Saldivar*, 62 F.3d 697, 699 (5th Cir. 1995).

In the present case, the Officers testified that they did inform Appellant of his rights prior to the initial questioning as well as prior to each subsequent questioning. (R.R. Vol. 11, DX 1, SX 110, SX 113; C.R. 89-92). Accordingly, the first two *Mosley* factors weigh in favor of "scrupulous honoring." *Maestas*, 987 S.W.2d at 63. In addition, Officer Ramos stopped interrogating Appellant as soon as Defendant said he wished to return to his cell. (R.R. Vol. 11, DX 1). Once Appellant began to talk to Officers in the second and third interviews, he did not try to invoke his right to remain silent, to end the interrogation, or to speak with an attorney. (R.R. Vol. 11, SX 110, SX 113). Thus the fifth *Mosley* factor also weighs in favor of "scrupulous honoring." *Id*.

Officer Ramos testified that Appellant asked to be returned to his cell at about 10:00 p.m., on August 4, 2013. (R.R. Vol. 2, p. 34). Officer Yanez testified that he *Mirandized* Defendant again the next morning only after Appellant had spent the night in his cell. (R.R. Vol. 2, pp. 38-39). The time of the second interview began at approximately 11:00 a.m., on August 5, 2013, some thirteen hours after the termination of the first interview. (R.R. Vol. 2, p. 41). After being *Mirandized*, the Appellant, who indicated that he understood his rights, spoke with

Officer Yanez in the second recorded conversation.

The third *Mosley* factor was meant to guard against abuses in subsequent questioning. For example, in *United States v. Hernandez*, 574 F.2d 1362 (5th Cir. 1978), the Fifth Circuit found a *Miranda* violation where police resumed questioning thirty to forty-five minutes after the defendant's invocation of the right. The present case is more like *Kelly v. Lynaugh*, 862 F.2d 1126 (5th Cir. 1988), cert. denied, 492 U.S. 925 (1989) and *West v. Johnson*, 92 F.3d 1385 (5th Cir. 1996), two cases in which the Fifth Circuit found police had scrupulously honored the suspect's assertion of the right to remain silent. In *Kelly*, police *Mirandized* Kelly when he was arrested. Five hours later, officers approached Kelly and read the *Miranda* warnings, and Kelly again invoked his right to remain silent, which the police honored. After four to six hours, police approached Kelly with a co-defendant's confession. Kelly orally confessed and signed a written confession which included the *Miranda* warnings. In *West*, police *Mirandized* West when arresting him. He invoked his right to remain silent during the initial police interview and police terminated the questioning. Police approached West again more than thirteen hours later. The present case is also similar to *Maesteas*, 987 S.W.2d at 60, 64, wherein the court found that the police had scrupulously honored the defendant's assertion of her right to remain silent. In *Maestas*, the

police left defendant in her cell when she asserted her right to remain silent, but returned some nine hours later and *Mirandized* her again. The defendant waived her right to remain silent, the police questioned her and obtained a confession from her. *Id*. In the present case the fact that officers returned Appellant to his cell for the night and did not return until some thirteen hours later indicates that the police did honor the Appellant's purported assertion of his right. Therefore, the third *Mosley* factor weighs in favor of "scrupulous honoring."

The subsequent questioning of the Appellant herein did not focus on a different crime, so the State concedes that the fourth *Mosley* factor does not weigh in favor of "scrupulous honoring." However, as part of the *Mosley* analysis, this Court should also consider other facts and circumstances in determining whether a defendant's right to remain silent was "scrupulously honored." *Maestas*, 987 S.W.2d at 64. Specifically, in this case, Appellant was not coerced or promised anything for talking with officers. Officers testified Appellant had access to necessities such as food, water, and restroom facilities. (R.R. Vol. 2, pp. 15, 38). Finally, although officers initiated the questioning that resulted in Appellant's statement, ongoing investigations provided them with additional information which tended to show that Appellant was present at the scene of the murder. (R.R. Vol. 10, SX 5). These additional considerations tend to support the conclusion

that police "scrupulously honored" Appellant's right to remain silent.  *Id*.

After applying the *ad hoc* test set out in the case law to the evidence in the record, this Court should find Appellant's purported assertion of his right to remain silent was "scrupulously honored."

*Threats to arrest Appellant's family did not render his statement involuntary*

Appellant further alleges that threats were made by law enforcement to arrest Appellant's parents.  Appellant argues that these threats resulted in Appellant providing an involuntary confession.

The Supreme Court has recognized that threats against family members can result in an involuntary confession.  In *Harris v. South Carolina*, the Court found a confession to be involuntary based upon a number of circumstances that included a threat to arrest the suspect's mother.  338 U.S. 68, 69–71 (1949) (detailing the circumstances); *id*. at 70 (threat to arrest mother).  In *Lynumn v. Illinois*, the Court found a confession to be involuntary under circumstances that included threatening to take away the suspect's children.  372 U.S. 528, 534 (1963).  The State acknowledges that several lower courts have likewise recognized that a threat against a family member may result, under the totality of the circumstances, in an involuntary confession.  Nevertheless, three federal

circuits (including the U.S. Court of Appeals for the Fifth Circuit) and several state high courts have held that law enforcement officials can threaten to arrest a family member, without vitiating the voluntariness of a confession, if they can lawfully effectuate such an arrest (*i.e.*, if there is probable cause to arrest). *Allen v. McCotter*, 804 F.2d 1362, 1364 (5th Cir. 1986) (police had probable cause to arrest wife for aiding a robbery); *United States v. Johnson*, 351 F.3d 254, 263 (6th Cir. 2003) ( "whether the threat to prosecute ... was coercive turns on the issue of whether the threat could have been lawfully executed.  Whether the police could have lawfully arrested ... in turn depends on whether the investigating officers had probable cause" - probable cause existed, so threat did not constitute coercive conduct); *Thompson v. Haley*, 255 F.3d 1292, 1297 (11th Cir.2001) ("whether a threat to prosecute a third party was coercive depends upon whether the state had probable cause to believe that the third party had committed a crime at the time the threat was made" - suspect's girlfriend's own statement established her participation in the crime); *Armstead v. State*, 978 So. 2d 642, 648 (Miss. 2008) ("Threats to arrest a defendant's family member(s) do not render a confession involuntary so long as probable cause exists to arrest such persons."  Because the cocaine was found in the kitchen, probable cause existed to arrest the suspect's wife.  *Citing Allen* 804 F.2d at 1364); *State v. Perez*, 124 Ohio St.3d 122, 131-32,

920 N.E.2d 104, 119–20 (2009) ( "Threats to arrest members of a suspect's family may cause a confession to be involuntary. The issue turns on whether the threat could have been lawfully executed." [citations, internal quotation marks, and ellipses omitted] "Because the officers could have lawfully arrested [the suspect's wife], threatening to do so was not a coercive tactic."). *See also Commonwealth v. Raymond*, 424 Mass. 382, 396, 676 N.E.2d 824, 834 (1997) ("While the police may not expressly bargain with the defendant over the release of other individuals or make threats of arresting and charging others with no basis, where this type of conduct is absent, the police may bring to the defendant's attention the possibility that his relatives may be culpable." [citation omitted] *Citing Allen* 804 F.2d at 1364); *Brisbon v. United States*, 957 A.2d 931, 946 n.17 (D.C. App. 2008) ("Some courts draw a distinction between deceptive and truthful pressure tactics involving family members." *Citing Johnson,* 351 F.3d 254, 263, *and Armstead*, 978 So. 2d 642, 648).

The Texas Court of Criminal Appeals acknowledged the foregoing authorities in *Contreras* and held, in that case, that because law enforcement did *not* have probable cause to arrest the defendant's wife, the evidence did raise a fact issue regarding whether the threat to arrest his wife rendered the defendant's confession involuntary. *Contreras v. State*, 312 S.W.3d 566, 576-77 (Tex. Crim.

App. 2010).

In the present case, the evidence demonstrates that law enforcement did have probable cause to charge Appellant's parents with hindering apprehension, as well as with assisting Appellant in the evading of his arrest. (R.R. Vol. 2, p. 19-21, 45). Therefore, because the record reflects that officers did have probable cause to arrest Appellant's family, the trial court was did not err in finding that Appellant's statement was not coerced by the officers actions.

Accordingly, Appellant's first issue should be overruled.

### State's Response to Appellant's Second Issue

In Appellant's second issue, he challenges the sufficiency of the evidence. Specifically, appellant contends the evidence is insufficient to show he murdered the victim herein in the course of course of committing retaliation. The State responds by noting that the evidence is legally sufficient to support a capital murder conviction.

### Standard of Review

The Texas Court of Criminal Appeals has determined that "the *Jackson v. Virginia* legal-sufficiency standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each

element of a criminal offense that the State is required to prove beyond a reasonable doubt." *Brooks v. State*, 323 S.W.3d 893, 894-95 (Tex. Crim. App. 2010). Therefore this Court must review Appellant's sufficiency issue on appeal under the *Jackson v. Virginia* legal sufficiency standard. *Id.*

In a sufficiency review, this Court must view all evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of a crime beyond a reasonable doubt. *Salinas v. State*, 163 S.W.3d 734, 737 (Tex. Crim. App. 2005). The jury, as the sole judge of the credibility of the witnesses, is free to believe or disbelieve all or part of a witness' testimony. *Jones v. State*, 984 S.W.2d 254, 257 (Tex. Crim. App. 1998). The jury may reasonably infer facts from the evidence presented, credit the witnesses it chooses to, disbelieve any or all of the evidence or testimony proffered, and weigh the evidence as it sees fit. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986). Reconciliation of conflicts in the evidence is within the jury's discretion and such conflicts alone will not call for reversal if there is enough credible evidence to support a conviction. *Losada v. State*, 721 S.W.2d 305, 309 (Tex. Crim. App. 1986). An appellate court may not reevaluate the weight and credibility of the evidence produced at trial and in so doing substitute its judgment for that of the fact finder. *King v. State*, 29 S.W.3d 556, 562 (Tex.

Crim. App. 2000). Inconsistencies in the evidence are resolved in favor of the verdict. *Curry v. State*, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000). This Court does not engage in a second evaluation of the weight and credibility of the evidence, but only ensures the jury reached a rational decision. *Muniz v. State*, 851 S.W.2d 238, 246 (Tex. Crim. App. 1993); *Harris v. State*, 164 S.W.3d 775, 784 (Tex. App.--Houston [14th Dist.] 2005, pet. ref'd.).

*The Law Concerning Retaliation*

Appellant complains that there is legally insufficient evidence to support his conviction for capital murder. Appellant was charged with intentionally causing the death of the victim herein while Appellant was "then and there in the course of committing or attempting to commit the offense of retaliation against" the victim. (C.R. 20). The offense of "obstruction or retaliation" is defined as follows:

> (a) A person commits an offense if he intentionally or knowingly harms or threatens to harm another by an unlawful act:
>
> > (1) in retaliation for or on account of the service or status of another as a:
> > (A) public servant, witness, prospective witness, or informant; or
> > (B) person who has reported or who the actor knows intends to report the occurrence of a crime; or
>
> > (2) to prevent or delay the service of another as a:
> > (A) public servant, witness, prospective witness, or informant; or

(B) person who has reported or who the actor knows intends to report the occurrence of a crime.

Tex. Penal Code § 36.06.

*The Evidence at Trial*

The evidence presented at trial included the statement of Appellant. Appellant admitted in his third statement to police that he ran up the stairs at an apartment complex chasing a person identified as Leonel Garcia. The victim in this case was on the stairwell to the second floor. Appellant states that he noticed the victim on the stairs and ordered her "Don't move, don't move, don't look." Appellant then kicked in the door of Leonel Garcia's apartment and shot into his apartment several time. Appellant then states that as he turned to leave, the victim turned towards him and looked at him and the victim stated that she was sorry. Appellant states that he told the victim "why did you turn?" and then shot the victim once. In response, the victim cried out, and Appellant stated "I thought she was threatening that she was gonna call the law or something, like 'cause she saw my face." Appellant then states that she shot the victim several more times. Appellant adds that he shot the victim with the intention to "scare her." (C.R. 109-112; R.R. Vol. 11, SX 113).

Based on this statement by Appellant, the jury could have reasonably

inferred that he shot the victim on account of the victim's status as a person who the Appellant knew intended to report a crime (said crime being Appellant's shooting into Leonel Garcia's apartment), or the jury could have reasonably inferred that he shot the victim to prevent or delay the victim's service as a person who Appellant knew intended to report the occurrence of a crime. In either event, the evidence was sufficient to support Appellant's conviction for capital murder, because the evidence demonstrated that Appellant intentionally caused the death of the victim herein while in the course of committing or attempting to commit the offense of retaliation.

Therefore, Appellant's second issue should be overruled.


### State's Response to Appellant's Third Issue

Appellant next complains that the trial court refused to include a "benefit of the doubt" instruction in the jury charge. The State concedes that "[w]here an offense consists of different degrees, a charge giving the defendant the benefit of a reasonable doubt between the degrees would be proper, and it would be error ordinarily in such case to refuse such a charge when requested." *McCall v. State*, 14 Tex. Ct. App. 353, 363 (1883), *cited with approval, Barrios v. State*, 283 S.W.3d 348, 352 (Tex. Crim. App. 2009); *see also Kihega v. State*, 392 S.W.3d

828, 835-36 (Tex. App.--Texarkana 2013, no pet.) (holding trial court erred by failing to include "benefit of the doubt" instruction where charge given the jury authorized convictions on capital murder as well as lesser-included offenses of murder, manslaughter, and criminally negligent homicide). Although the State concedes error, this Court should nevertheless determine that no harm befell Appellant as a result of that error.

Where jury charge error is alleged, this Court must first determine whether error exists in the charge; if there was error, the Court must then determine whether sufficient harm resulted from that error to compel reversal. *Ngo v. State*, 175 S.W.3d 738, 743-44 (Tex. Crim. App. 2005). Where the defendant properly objects to the charge, any error requires reversal if said defendant suffered some harm as a result of the error. *See Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984). The harm caused by the error must be considered "in light of the entire jury charge, the state of the evidence, including the contested issues and the weight of probative evidence, the arguments of counsel and any other relevant information revealed by the record of the trial as a whole." *Id*. at 171; *see also* Tex. Code Crim. Proc. art. 36.19. Appellant must have suffered actual harm, not merely theoretical harm. *See Arline v. State*, 721 S.W.2d 348, 352 (Tex. Crim. App. 1986). Where a defendant fails to properly object, reversal is warranted only

where the appellant suffered harm so egregious as to have been denied a fair and impartial trial. *Almanza*, 686 S.W.2d at 171.

Appellant requested that the jury charge include an instruction on the "benefit of the doubt," as follows:

> If you should find from the evidence beyond a reasonable doubt that the defendant is either guilty of capital murder or murder, but you have a reasonable doubt as to which offense he is guilty, then you should resolve that doubt in defendant's favor, and in such event, you will find the defendant guilty of the offense of murder. (C.R. 415).

Appellant urged the Court to include the above instruction in the charge; however, the trial court overruled Appellant's request. (R.R. Vol. 7, pp. 11-12). The charge given the jury did authorize convictions on the lesser offense of murder. In each application paragraph, the trial court's charge instructed the jury to convict Appellant of the particular offense if the jury found the respective elements to have been proved beyond a reasonable doubt. It went on to instruct that if the jury had a reasonable doubt as to each particular offense, the charge instructed the fact-finder to acquit Appellant and next consider whether he was guilty of the next lesser offense. (C.R. 445-446).

As cited above, a trial court errs to refuse such a requested instruction. *McCall*, 14 Tex. Ct. App. at 363; *see also Sparks v. State*, 108 Tex. Crim. 367, 300 S.W. 938, 939 (1927); *Bussell v. State*, 98 Tex.Crim. 170, 265 S.W. 164, 165

(1924). Because Appellant properly objected to the charge as given, this Court should reverse the trial court's judgment only if it can be shown that Appellant suffered some actual harm. The presence of some harm, regardless of degree, is sufficient to require reversal. *Abdnor v. State*, 871 S.W.2d 726, 732 (Tex. Crim. App. 1994). This Court should take into account the entire jury charge, the state of the evidence, argument of counsel, and any other relevant information revealed by the record in its entirety. *Abdnor*, 871 S.W.2d at 733.

The jury charge instructed the jury to find Appellant guilty of capital murder only if the jury unanimously found, beyond a reasonable doubt, that he was guilty of that crime. If the jury failed to unanimously make that finding beyond a reasonable doubt, or if the jury harbored such a reasonable doubt as to his guilt, it was instructed to find Appellant not guilty of capital murder and to then consider whether he was guilty of the lesser offense of murder. (C.R. 445). Similarly, the jury was only authorized to find Appellant guilty of murder if they unanimously found, beyond a reasonable doubt, him to be guilty of that offense. Should they have a reasonable doubt, the jury was told to find Appellant not guilty of murder. (C.R. 445-446). The jury charge gave explicit requirements for findings of guilt and directed the jury to consider lesser offense only if the greater offense was not proven.

The evidence supporting a finding of guilty on the charge of capital murder was solid.  Appellant's confession to the police was that he not only caused the death of the victim, but he did so because he believed the victim would identify Appellant to the police as the person who had just shot into the apartment.

The State briefly mentioned the lesser-included offense in its closing argument:

> Let's go on to number four.  And number four for -- if you find that there is no or insufficient probable cause as to this first count of capital murder, you will conclusively, the very next one eliminates retaliation from the wording.  And you can still find him guilty of murder if you find from all the evidence that he is responsible for knowingly and intentionally causing her death.  (R.R. Vol. 7, p. 20).

That the jury would not consider the lesser offense murder unless first concluding that Appellant was not guilty of the primary offense of capital murder is a correct statement of the law.  The State then continued to argue that the evidence pointed to affirmative findings on all of the requisite elements of capital murder.

Several intermediate courts (including this Court) have addressed similar situations (i.e., where the requested "benefit of the doubt" instruction was not given).  In *Shelby v. State*, 724 S.W.2d 138 (Tex. App.--Dallas 1987) (op. on reh'g), *vacated on other grounds*, 761 S.W.2d 5 (Tex. Crim. App. 1988), the

reviewing court observed that the charge given the jury made clear that the defendant could only be found guilty of murder if the jury had no reasonable doubt as to his guilt. Although the trial court failed to give the requested instruction on benefit of the doubt, the charge given "le[ft] no uncertainty as to how to resolve the doubt or where the burden of proof lies on that issue" if the jury were in doubt as to whether Shelby was guilty of murder or aggravated assault. *Id*. at 140. "When the charge given by the court adequately presents the defense proposed by a requested instruction, the accused is not harmed." *Thomas v. State*, 578 S.W.2d 691, 698 (Tex. Crim. App. 1979) (trial court's instructions on availability of self defense sufficiently presented defensive theory proposed by defendant's requested instruction).

In *Benavides v. State*, 763 S.W.2d 587 (Tex. App.--Corpus Christi 1988, pet. ref'd), the trial court also denied the defendant's request for a benefit of the doubt instruction. Noting that the given charge "clearly instruct[ed] the jury that, if it is not convinced beyond a reasonable doubt that appellant is guilty of aggravated robbery, it should acquit him of the greater offense before considering appellant's guilt on the lesser offense," this Court found that no further benefit of the doubt instruction was necessary. *Id*. at 589. "Any reasonable doubt about whether the appellant is guilty of the lesser or greater offense thus results in an

acquittal of the greater offense before the jury even considers the lesser offense."

*Id*.

Here, likewise, the trial court's instructions to the jury clearly required a finding of guilt beyond a reasonable doubt on the charged offense of capital murder. It went on to instruct the jury that if it harbored any such doubt, it was instructed to acquit Appellant and then consider the lesser offense of murder. Likewise, the jury was authorized to find Appellant guilty of murder only if it found him guilty of that offense beyond a reasonable doubt: in the face of such degree of doubt, the jury was plainly told to find him not guilty. In other words, the instructions adequately instructed the downward ladder of instructions for the lesser offense.

Thus, the charge provided for consideration of an alternative lesser offense and authorized consideration and conviction for a lesser offense if the jury had reasonable doubt as to the primary charged offense. As summarized above, the evidence establishing Appellant's guilt for causing the death of the victim while in the course of committing the offense of retaliation was very solid. The State did not spend any time addressing the lesser offense in its closing argument, and when it did so, it did it in the context of directing the jury toward the evidence to establish guilt of capital murder. Considering the entire charge, the state of the

evidence, and the State's arguments, this Court cannot find that Appellant was harmed by the denial of his request for a benefit of the doubt instruction. *See also Kihega*, 392 S.W.3d at 837-38 (holding defendant was not harmed by trial court's denial of "benefit of the doubt" instruction where jury charge adequately instructed the downward ladder of instructions for the lesser-included offenses). Therefore, this Court should overrule the third issue.

**State's Response to Appellant's Fourth Issue**

In his fourth issue, Appellant complains that the trial court erred in sentencing Appellant *in absentia*. The State responds by asserting that the trial court's decision to proceed with the punishment phase in Appellant's absence was not an abuse of discretion.

"One of the most basic of the rights guaranteed by the Confrontation Clause is the accused's right to be present in the courtroom at every stage of his trial." *Illinois v. Allen*, 397 U.S. 337, 338 (1970). Article 33.03 of the Texas Code of Criminal Procedure provides that a defendant must be personally present at the trial of a felony unless he "voluntarily absents himself after pleading to the indictment or information, or after the jury has been selected when trial is before a jury, [in which case] the trial may proceed to its conclusion." Tex. Code Crim.

Proc. art. 33.03. Thus, "[a]fter commencement of trial proceedings, a defendant may voluntarily absent himself from the trial without a violation of his Sixth Amendment right to be present during all phases of the trial." *Ashley v. State*, 404 S.W.3d 672, 680 (Tex. App.--El Paso 2013, no pet.) (*citing Taylor v. United States*, 414 U.S. 17, 18-19 (1973) (per curiam); *Miller v. State*, 692 S.W.2d 88, 90 (Tex. Crim. App. 1985); *Tracy v. State*, 14 S.W.3d 820, 826 (Tex. App.--Dallas 2000, pet. ref'd)). "This is because the Supreme Court has recognized that a defendant's conduct in voluntarily absenting himself after his trial has commenced with him in attendance amounts to a forfeiture of his Sixth Amendment right to be present during the time he is absent." *Ashley*, 404 S.W.3d at 680 (*citing Taylor*, 414 U.S. at 18–19; *Miller*, 692 S.W.2d at 90–91).

The State responds initially to Appellant's fourth issue by noting that Appellant failed to preserve this point on appeal because his counsel did not timely object to the trial court's decision to proceed with punishment. (R.R. Vol. 8, pp. 5-8). *See* Tex. R. App. P. 33.1(a)(1) (providing that timely objection, request, or motion is necessary to preserve error for appellate review). Further, Appellant's counsel did not introduce any evidence that Appellant's absence was involuntary, nor did Appellant include in his motion for new trial a ground alleging that he was unlawfully tried in absentia; therefore, he did not preserve this

issue for appellate review. *See* Tex. R. App. P. 21.2 (providing that a motion for new trial is a prerequisite to appeal when necessary to adduce facts not in the record), 21.3(a) (felony defendant must be granted a new trial when he has been unlawfully tried in absentia); *Heard v. State*, 887 S.W.2d 94, 98 (Tex. App.--Texarkana 1994, pet. ref'd) (describing evidence appellant introduced at hearing on motion for new trial as proof that his absence from trial was not voluntary). Accordingly, this Court should hold that Appellant failed to preserve this issue for review, or alternatively, failed to present any evidence that the trial court abused its discretion in finding that Appellant was voluntarily absent from the punishment phase of his trial and thereby concluding Appellant's trial in his absence. *See Gonzales v. State*, 515 S.W.2d 920, 920-21 (Tex. Crim. App. 1974) (holding that trial court did not abuse its discretion in finding that defendant was voluntarily absent from trial when defendant did not appear at punishment phase of trial, but was present for sentencing, and did not introduce any evidence of reasons for his absence).

In the event this Court determines that this issue has been preserved, then the State would assert that the trial court did not abuse its discretion in proceeding with the sentencing of Appellant, because the record reflects that he did voluntarily absent himself from the courtroom. This Court reviews the trial

court's decision that a defendant voluntarily absented himself from trial for an abuse of discretion. *Papakostas v. State*, 145 S.W.3d 723, 725 n. 2 (Tex. App.--Corpus Christi 2004, no pet.) (*citing Moore v. State*, 670 S.W.2d 259, 261 (Tex. Crim. App. 1984)). "In most instances, the appellate court must determine, from hindsight, the validity of the trial court's determination that the defendant's absence was voluntary." *Hudson v. State*, 128 S.W.3d 367, 375 (Tex. App.--Texarkana 2004, no pet.) (*citing Moore*, 670 S.W.2d at 261). "The defendant must provide evidence to refute the trial court's determination, or we will not disturb the trial court's finding." *Id*. at 375–76.

"[A] defendant cannot avoid trial by intentionally disabling himself." *Maines v. State*, 170 S.W.3d 149, 150 (Tex. App.--Eastland 2005, no pet.). In this case, Appellant became violent upon hearing the jury's verdict of guilty, and had to be physically restrained by several courtroom bailiffs. When Appellant refused to calm down, he was ordered removed from the courtroom. (R.R. Vol. 8, pp. 3-5). Appellant concedes that the record contains evidence demonstrating that he was removed from the punishment phase of the trial because of his violent outburst. (Appellant's brief, p. 23).

A defendant has "no right to interrupt the trial by his voluntary absence." *Taylor*, 414 U.S. at 20. "The busy trial courts of our state cannot stop the wheels

of an already burdened criminal justice system because a defendant chooses to be absent from his own trial." *Sanchez v. State*, 842 S.W.2d 732, 733 (Tex. App.--San Antonio 1992, pet. ref'd). Thus, Texas courts have held that a defendant voluntarily absents himself from trial when he attempts to commit suicide, is placed in a hospital, and, as a result, is not present in the courtroom. *See id.*; *Bottom v. State*, 860 S.W.2d 266, 267 (Tex. App.--Fort Worth 1993, no pet.); *see also Heard v. State*, 887 S.W.2d 94, 98-99 (Tex. App.--Texarkana 1994, pet. ref'd) (holding absence voluntary when caused by self-induced intoxication). In the absence of any evidence that a defendant's absence was involuntary, this Court must "engage in the presumption that the trial court finding regarding the voluntariness of appellant's absence is correct." *Aguirre v. State*, 695 S.W.2d 793, 794 (Tex. App.--San Antonio 1985, no pet.) (*citing Gonzales v. State*, 515 S.W.2d 920, 921 (Tex. Crim. App. 1974)).

In light of these cases and in the absence of evidence to refute the trial court's determination that Appellant voluntarily absented himself from trial - evidence that could have been presented at the sentencing hearing, in a motion for new trial, or otherwise - this Court cannot conclude that the trial court abused its discretion.

Finally, with regard to Appellant's complaint that he had filed an election to

have the jury assess his punishment, the State would note that Appellant waived this right on the record. (R.R. Vol. 8, p. 5). Specifically, Appellant's counsel asked the trial court to "excuse the jury and then sentence him in absentia." A criminal defendant may always change his election of the one who assesses punishment. *See* Tex. Code Crim. Proc. art. 37.07, § 2(b).

Accordingly, Appellant's fourth issue should be overruled.

## PRAYER

**WHEREFORE, PREMISES CONSIDERED**, the State of Texas prays that this Court will overrule Appellant's issues on appeal, and affirm both the judgment of conviction and the sentence herein.

Respectfully Submitted,

**LUIS V. SAENZ**
**Cameron County District Attorney**
964 East Harrison Street, 4th Floor
Brownsville, Texas 78520
Phone: (956) 544-0849
Fax:(956) 544-0869


By:  */s/ René B. González*
**René B. González**
Assistant District Attorney
State Bar No. 08131380
rgonzalez1@co.cameron.tx.us
**Attorneys for the State of Texas**

## CERTIFICATE OF COMPLIANCE

I certify that this document contains 7,784 words (excluding the cover, table of contents and table of authorities). The body text is in 14 point font, and the footnote text is in 12 point font.

/s/ René B. González
René B. González

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing State's appellate Brief was served by electronic mail upon Mr. Edmund K. Cyganiewicz, Attorney at Law, 1000 East Madison Street, Brownsville, Texas 78520, edcyganiewicz@rgv.twcbc.com on the 9th day of November, 2015.

/s/ René B. González
René B. González